697 So.2d 39 (1997)
STATE of Louisiana
v.
Dennis SMITH.
No. 96 KA 0961.
Court of Appeal of Louisiana, First Circuit.
June 20, 1997.
Walter P. Red, Assistant District Attorney, Covington, for Plaintiff/Appellee State of Louisiana.
*40 William R. Campbell, Jr., New Orleans, for Plaintiff/Appellee State of Louisiana.
Marion B. Farmer, Covington, for Defendant/Appellant Dennis R. Smith.
Before WATKINS, GONZALES and KUHN, JJ.
KUHN, Judge.
Defendant, Dennis Smith, was charged by bill of information with bigamy in violation of La.R.S. 14:76. He pled not guilty and, thereafter, filed an "Application for Hearing to Determine Defendant's Mental Condition." After the trial court ruled that defendant was competent to stand trial, a jury found him guilty as charged. Defendant filed a motion for new trial and a motion for post verdict judgment of acquittal, both of which were denied by the trial court. He was then sentenced to three years at hard labor, suspended, and was placed on probation for three years. The trial court imposed several conditions of probation, including the following: defendant was to serve forty-five days in the parish jail; defendant was to have no contact with Lydia Doll Smith during the period of probation; and defendant was to submit to random drug screening. Finally, defendant was given credit for any time served. Defendant has appealed, alleging the trial court erred in denying his motion for post verdict judgment of acquittal (based on his reasonable and honest belief that a valid divorce had been secured from his first wife) and his motion for new trial (based on newly discovered evidence).

FACTS
In May of 1987, defendant and Lydia Doll were married. In February of 1994, defendant left the matrimonial domicile, and Ms. Doll filed for divorce. In July of 1994, defendant married Sandra Joy Baxter. Subsequent to his marriage to Ms. Baxter, defendant was arrested and charged with bigamy. Defendant and Ms. Doll were eventually divorced, and defendant and Ms. Baxter were then legally married.
At trial, Wendy Ouder testified that in her position as deputy clerk of court in St. Tammany Parish, she accepted marriage license applications. Generally, she asks applicants for their name, address, social security number, date of birth, the state in which they were born, and their educational level. She also asks applicants for a certified birth certificate and whether or not either of them have been married. Finally, she types the application and has the parties verify the information.
Ms. Ouder testified she did not specifically remember defendant and Ms. Baxter applying for a marriage license on July 19, 1994; however, her signature on their application signifies that she did issue their marriage license. She testified that on that date she would have followed the same procedures she had described regarding the application process. In looking over the application, she testified it indicates that this was a first marriage for both parties, and that defendant had completed the twelfth grade and Ms. Baxter had completed one year of college.
Sandra Joy Baxter testified that she and defendant began dating in March of 1994, began living together within a month thereafter, and married in July of 1994. During this time period, Ms. Doll called them and identified herself as defendant's "ex-wife"; based on this, Ms. Baxter assumed that defendant was divorced. Further, Ms. Doll never told her "you are living with my husband." Finally, she testified that Ms. Doll "wanted more money" from defendant and that Ms. Doll "wanted as much money as she could get out of him, and she said that she would drop the charges."
Ms. Baxter further testified that she provided all information to the deputy clerk when she and defendant applied for their marriage license; she added that defendant has a speech problem and she would "translate" for him because a lot of people cannot understand him. She stated that she believed he was divorced, otherwise she would never have married him because "we had nothing to gain by doing that." When asked why she told the deputy clerk that this would be defendant's first marriage, she stated she was pregnant and was being rushed by her family to get married.
*41 Lydia Doll testified that she and defendant were married in May of 1987. Defendant left the matrimonial domicile in February of 1994, and thereafter she filed for divorce (date not given). She stated that defendant had been a truck driver and that they owned their own business for which defendant did the bookkeeping. At some point, defendant had a painting and pressure washing business. She believed defendant had a "good education" because he had shown her a "certificate," although she did not recall whether it was from a college or a vocational-technical school.
Ms. Doll further testified that, in July of 1994, she received a telephone call from an unknown individual who stated defendant had married Ms. Baxter; she thought it was a prank call. At one point, Ms. Baxter telephoned her, "before July," and "asked me was we married, [defendant] and I, and I told her yeah and [Ms. Baxter] asked me was I divorced and I told her no." After learning that defendant had married Ms. Baxter, Ms. Doll checked the clerk of court's office and learned that defendant had in fact married Ms. Baxter; she then pressed charges.
Ms. Doll denied that she had threatened individuals if they testified for defendant. She denied telephoning defendant and speaking with Ms. Baxter. Further, she testified that she and defendant had talked about the need for her to divorce her first husband before she could marry defendant, and in fact she and defendant had called the clerk of court to make sure that she was divorced.
Douglas Ray Dillard, Ms. Doll's nephew, testified that on one occasion he met defendant at a bar and defendant stated he was getting married. Dillard testified that, when he noted that defendant was still married to Ms. Doll, defendant stated "Huh" and laughed.
Jerry Allen Davis testified that he attended the reception held at the home of Ms. Baxter's grandmother after Ms. Baxter and defendant were married. He further testified there was a "pretty good bit of people there," and it was known in the community that the couple was getting married. He stated that when defendant was asked if he was divorced "he said he was."

ASSIGNMENT OF ERROR NO. ONE
In this assignment of error, defendant contends the trial court erred in failing to grant his motion for a post verdict judgment of acquittal due to insufficient evidence. Defendant further contends that those persons who remarry with a reasonable and honest belief that their first marriage ended by divorce have not committed bigamy and that this exception, as found in La.R.S. 14:76, is an affirmative defense and must be proven by a preponderance of the evidence, citing State v. Cheatwood, 458 So.2d 907 (La.1984), and State v. Landry, 381 So.2d 462 (La. 1980). Finally, defendant contends that his reasonable and honest belief that a valid divorce had been obtained established reasonable doubt that he had committed bigamy.
Under State v. Morris, 615 So.2d 327 (La. 1993), we are required to first review the sufficiency of the evidence despite our reversal of the trial court's ruling denying the motion for new trial, as found in assignment of error number two. The standard of review for the sufficiency of the evidence is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La. Code Crim.P. art. 821; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Louisiana Revised Statutes 14:76, which defines the crime of bigamy, provides in pertinent part:
Bigamy is the marriage to another person by a person already married and having a husband or wife living; or the habitual cohabitation, in this state, with such second husband or wife, regardless of the place where the marriage was celebrated.
The provisions of this article shall not extend:
* * * * * *
(3) To any person who has, at the time of the second marriage, a reasonable and honest belief that his or her former husband or wife is dead, or that a valid divorce *42 or annulment has been secured, or that his or her former marriage was invalid.
In the instant case, the state established defendant married Ms. Lydia Doll in May of 1987; although divorce proceedings had been instituted, there was no judgment of divorce, and in July of 1994, defendant married Ms. Sandra Joy Baxter. In addition, the jury heard the testimony of the various witnesses (e.g. Lydia Doll, Sandra Joy Baxter, Jerry Allen Davis, and Douglas Ray Dillard) regarding the issue of whether or not defendant had a "reasonable and honest belief" that a valid divorce had been secured as to his first marriage.
On appeal this court will not assess the credibility of witnesses or reweigh the evidence to overturn the fact finder's determination of guilt. State v. Ford, 608 So.2d 1058, 1062 (La.App. 1st Cir.1992). Thus, considering the evidence in the light most favorable to the prosecution, the jury, as a rational trier of fact, could have found that the state proved the necessary elements of the crime beyond a reasonable doubt, and that defendant failed to establish his affirmative defense by a preponderance of the evidence.
We find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. TWO
In this assignment of error, defendant contends that the trial court erred in failing to grant his motion for new trial based on new and material evidence. Specifically, defendant contends that the evidence offered by Kyron Sharp, Vickie Galloway, and Pearl Garrett (all employees in the St. Tammany Parish Clerk of Court's office) is sufficient to warrant a new trial.[1]
At the hearing on the motion for new trial, defendant offered the testimony of Kyron Sharp, a minute clerk, who testified that on October 14, 1994, defendant came to the clerk's office looking for his divorce records; however, she could only find a suit for a protective order. She testified as follows:
Well, we tried to explain to him, you know, he kept telling us he went to court; he knew he was divorced. And we kept telling him he may have gone to court, but he didn't go for a divorce, and we told him it was for a protective order. He didn't really understand this.
She testified that defendant was "very upset... was crying and was real emotional... he just couldn't believe it ... he kept telling us to keep looking, that there had to be something else there, that he knew that he was divorced." She showed him the papers, but he told them "he couldn't read," so they read the papers to him. She further testified that it was her "impression that [defendant] was under the impression that he was divorced." The employees finally placed a telephone call to Ms. Baxter.
Vickie Galloway, also an employee of the clerk's office, testified that on one occasion she went to a judge's office where she saw defendant; she then asked another employee of the clerk's office, Jeanell Wise, "what was going on." She learned that defendant was on trial for bigamy and was being represented by Marion Farmer. She recognized defendant from the incident of October 14, 1994, i.e., when he went to the clerk's office looking for evidence of his divorce and became emotional when such could not be found. She further stated that her testimony regarding defendant's behavior and actions on the day in question would be basically the same as that of Kyron Sharp.
Thereafter, defendant's counsel stipulated that he had received the above information from Jeanell Wise, who "called ... and indicated... that she didn't know if this was important, but that she had just found out that ... Vickie Galloway knew information about the case." Defendant's counsel further stated that this was how he came to discover the information and that his discovery was after the trial date.
*43 In order to obtain a new trial based on newly discovered evidence, the defendant has the burden of showing (1) the new evidence was discovered after trial, (2) the failure to discover the evidence at the time of the trial was not caused by lack of diligence, (3) the evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably have produced a different verdict. State v. Hammons, 597 So.2d 990, 994 (La.1992).
On review, a trial court's discretion will be given great weight; however, where the exercise of discretion is arbitrary and the judgment is unjust, it will be set aside. State v. Knapper, 555 So.2d 1335, 1339 (La. 1990). The trial judge's duty is not to weigh the new evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's judgment. State v. Prudholm, 446 So.2d 729, 736 (La. 1984).
In his appellate brief to this Court, defendant makes four specific arguments relating to the denial of his motion for new trial. (1) Defendant argues that the testimony of Vickie Galloway is new, and that it was not known to either defendant or his counsel until after his conviction. (2) Both defendant and his counsel were as diligent as possible in acquiring this evidence; no one could have known of Vickie Galloway's perceptions regarding defendant's actions on the day in question without her coming forward with her information. Further, defendant has a very low I.Q. and he lacked the mental ability to realize that he should have informed his counsel of this episode. (3) Vickie Galloway's testimony regarding defendant's reaction is very material to the trial. Because a reasonable and honest belief that the first marriage ended in a valid divorce is an affirmative defense to bigamy, defendant's sudden outburst of uncontrollable crying and Vickie Galloway's impression of the episode directly and materially address this defense. (4) Vickie Galloway's testimony directly relates to an affirmative defense to bigamy. In light of the other evidence offered at trial, her testimony is the most convincing on the issue of whether defendant had a reasonable and honest belief that he had secured a valid divorce and would have produced a not guilty verdict.
With respect to the first prong of Hammons, it is clear from the record that defense counsel only learned of the incident in the clerk of court's office after trial on the merits.
The second prong of Hammons requires a determination that the failure to discover the evidence at the time of trial was not caused by lack of due diligence. Whether or not sufficient diligence was exercised must be determined from the composite knowledge and conduct of both the accused and his counsel. State v. Prudholm, 446 So.2d 729, 736 (La.1984). In the instant case, defense counsel's performance was adequately diligent. Accordingly, we must look to whether the defendant lacked due diligence in this matter. Dr. Salcedo (a clinical psychologist who examined defendant pursuant to a motion to determine competence) stated the following in his June 26, 1995, report:
Regarding [defendant's] ability to assist in his defense, he appeared capable of recalling and relating facts pertaining to his actions and whereabouts at the time of the alleged offense. He indicated to me that in fact, he believed he divorced his wife in 1992, and could recall that this occurred "in front of Judge Coady". He states that when he subsequently remarried, i.e., on July 20 of last year, he even told his friends to tell his ex-wife. He maintains "I ain't done nothing wrong, I told her I remarried".
Mr. Smith seems capable of assisting counsel in locating and examining relevant witnesses. He appears capable of maintaining a consistent defense. He seems capable of listening to the testimony of witnesses and informing his lawyer of any distortions or misstatements. He appears to have the ability to make simple decisions in response to well explained alternatives.
As noted by Dr. Salcedo, defendant may well have been capable of assisting in his defense by making "simple decisions in response *44 to well explained alternatives." However, it is evident that defendant was not capable of independently recognizing the possible legal significance of the incident in the clerk's office wherein he sought documentation to support his belief that he was divorced and became extremely upset upon finding no such documentation. Therefore, defendant failed to make defense counsel aware of the incident due to his inability to understand its potential importance, rather than due to any lack of diligence. Compare State v. Prudholm, 446 So.2d 729 (La.1984).
Finally, with respect to the third and fourth prongs of Hammons, we note that the new evidence consists of three unbiased witnesses who offered testimony regarding defendant's attempt, immediately after arrest, to verify his marital status and his emotional state upon being told that the records of the clerk's office did not contain documentation of a divorce. It is clear that the testimony of these three witnesses (Sharp, Galloway and Garrett) is material to the issues at trial, and that the testimony constitutes new material fit for a new jury's judgment.
For these reasons, the trial court's denial of the motion for new trial is reversed, and defendant's motion for new trial is granted.
CONVICTION AND SENTENCE VACATED. REMANDED.
GONZALES, J., respectfully dissents.
NOTES
[1] In a reply brief, defendant contends that his motion for new trial should also be granted in the interest of justice, pursuant to La.Code Crim.P. art. 851(5). However, where a defendant's motion for new trial is based on La.Code Crim.P. art. 851(5), the granting or denial of a new trial is not subject to review by the appellate courts. State v. Savoie, 448 So.2d 129, 135 (La. App. 1st Cir.), writ denied, 449 So.2d 1345 (La. 1984).