814 So.2d 72 (2002)
STATE of Louisiana
v.
Ike BROOKS.
No. 2001 KA 1138.
Court of Appeal of Louisiana, First Circuit.
March 28, 2002.
*74 Doug Moreau, District Attorney, Kim Landrum-Brooks, Tara S. Bourgeois, Assistant District Attorneys, Baton Rouge, for Appellee State of Louisiana.
David W. Price, Baton Rouge, for Appellant Ike Brooks.
Before: FOIL, PETTIGREW and KLINE[*], JJ.
FOIL, J.
Defendant, Ike Brooks, was charged by bill of information with two counts of armed robbery, violations of La. R.S. 14:64. He pled not guilty. On March 25, 1998, defendant was tried by Judge Donald Johnson of the 19th Judicial District Court and found guilty as charged on both counts. Following his conviction, defendant filed a motion for new trial, a motion for post verdict judgment of acquittal, and a motion in arrest of judgment. On November 29, 1999, during the motion for new trial hearing, the state filed a post-trial motion to recuse Judge Johnson from presiding in the matter. Judge Johnson referred this motion to another 19th Judicial District Court Judge, Judge Richard Anderson. On June 1, 2000, following a hearing, the motion to recuse was granted and the case was reassigned to Judge Louis R. Daniel. Judge Daniel denied defendant's *75 motion in arrest of judgment, motion for a new trial, and motion for post verdict judgment of acquittal. Judge Daniel sentenced defendant to imprisonment at hard labor for thirty years on each count, without the benefit of parole, probation or suspension of sentence, and ordered that the sentences be served concurrently. Defendant filed a motion to reconsider sentence, which Judge Daniel denied. Defendant appeals his convictions and sentences. Finding no merit in his assigned errors, we affirm defendant's convictions and sentences.

FACTS
On December 29, 1999, at approximately 3:00 a.m., Laronda Moore and Carol McQuirter were in Moore's Baton Rouge apartment when they heard a loud noise. At the time of the sound, Moore was in an upstairs bedroom, and McQuirter was in the downstairs kitchen. Two black men, one of whom was armed with a gun, entered the apartment and demanded money. Because McQuirter was downstairs, she was accosted first. At trial, McQuirter testified that the shorter perpetrator (later identified as defendant) grabbed her by her ponytail, held a gun to her head, and demanded money. As Moore came downstairs to investigate, she found defendant holding McQuirter at gunpoint. The other perpetrator, who remained unidentified, was unarmed throughout the encounter, and basically acted as a lookout throughout the robbery. Armed with the weapon, defendant forced Moore and McQuirter into an upstairs bedroom where he repeatedly asked them, "where is the money?" Thereafter, the two men robbed Moore and McQuirter of jewelry and money. Apparently dissatisfied with the amount of money received, defendant informed Moore and McQuirter that he would be taking them with him when he left and demanded that they take him to "the Diner," referring to a restaurant owned by Moore's boyfriend. Defendant instructed the unidentified perpetrator to go and get the car. The man complied with defendant's request, but never returned. Defendant fled the scene on foot, leaving the victims standing outside of the apartment.
Fearing that defendant and/or the other man would return, the victims chose not to re-enter the apartment. Instead, they left the apartment complex in McQuirter's vehicle to seek police assistance. The victims flagged down Baton Rouge City Police Officer Neal Salamonie and reported the robbery. Officer Salamonie testified that both victims described the shorter perpetrator as a black male of dark complexion, approximately five feet six inches tall, with many gold teeth.
Moore testified that after the robbery, she observed defendant driving down a Baton Rouge street. Recognizing him as one of the individuals who robbed her, Moore recorded the license plate number of the vehicle defendant was driving and reported the information to the investigating detective, Dave Mays. Moore further testified that she saw defendant again at her father's house, where he was a passenger in a vehicle driven by one of Moore's acquaintances.
Several months after the robbery, Detective Mays received an anonymous telephone call indicating that defendant, Ike Brooks, was involved in this robbery. Based upon this information, Detective Mays compiled a photographic lineup that included a picture of defendant. He presented the lineup to Moore at the Baton Rouge Police Department office on May 14, 1997. Although she did not know his name, Moore immediately identified defendant as the armed perpetrator of the robbery. She also completed a Photographic *76 Lineup Statement, wherein she confirmed her identification of the individual in photo # 3 (defendant) as the person who robbed her.
At trial, McQuirter testified that because she was working two jobs, she was unavailable to participate in the photographic lineup identification procedure. However, she testified that when she arrived at the courthouse on the day before trial, she saw defendant and immediately recognized him as one of the individuals who participated in the armed robbery at Moore's apartment. In addition to that identification, McQuirter positively identified defendant in court as one of the perpetrators.
On July 23, 1997, defendant was arrested and charged with two counts of armed robbery. At trial, defendant focused on the lack of physical evidence and presented a defense of misidentification. Defendant took the stand and denied committing the offenses. He maintained that the victims, particularly Moore, were blaming him for the armed robberies because of problems that existed between defendant and Moore's ex-boyfriend, Larry Burton. Defendant also urged an alibi, testifying that he was at home asleep with his live-in girlfriend and infant daughter at the time of the offenses. Defendant's girlfriend, Karen Brown, also testified in support of the alibi. Brown's testimony, consistent with that of defendant, indicated that defendant was at home asleep on December 29, 1999, at the time of the robberies. Brown testified that she was in the bed with defendant and would have known if he had gotten up. She denied defendant leaving the bed at all that night.

ASSIGNMENT OF ERROR NO. ONE
By this assignment, defendant asserts that the trial court erred in finding that he, a special education student with limited educational ability, knowingly and intelligently waived his right to a trial by jury. He challenges the validity of the waiver and contends the trial court erred in permitting him to proceed with a bench trial pursuant to an invalid waiver of his right to a trial by jury.
Both the United States Constitution and the Louisiana Constitution expressly guarantee a criminal defendant the right to a jury trial. U.S. Const. amend VI; La. Const. art. I, §§ 16, 17. However, some criminal defendants may, pursuant to statute, waive this constitutionally guaranteed right, provided the waiver of the right is knowingly and intelligently made. La. Code Crim. P. art. 780 A.
Defendant was charged with, and convicted of, two counts of armed robbery. At the time of the offense, La. R.S. 14:64 B provided for a sentence of not less than five years and not more than ninety-nine years at hard labor without the benefit of parole, probation, or suspension of sentence, thus requiring trial before a jury composed of twelve persons. La.Code Crim. P. art. 782. Because the offense is not punishable by death, an individual charged with armed robbery may waive his right to trial by jury and elect to be tried by the judge. La.Code Crim. P. art. 780 A. However, a valid waiver of the right to a jury trial must be established by a contemporaneous record setting forth an apprisal of that right followed by a knowing and intelligent waiver by the accused. State v. Smith, 447 So.2d 4, 5 (La.App. 3d Cir.1984). Waiver of this right is never presumed. See La.Code Crim. P. art. 780 A; State v. Williams, 404 So.2d 954, 956 (La.1981); State v. Gautreaux, 537 So.2d 324, 325 (La.App. 1st Cir.1988).
According to the minute entries contained in the record, on March 24, 1998, defendant appeared before the trial court *77 for arraignment on the instant charges. At this time, the court appointed the Office of the Public Defender to represent defendant. Thereafter, the court advised defendant of his right to be tried by a jury or to be tried by the court. Upon informing defendant of this constitutional right, the court allowed defendant fifteen days to elect to waive his right to a jury trial. Although there is no evidence that defendant waived his right to jury trial at this arraignment, the minute entry sufficiently shows that defendant was, at the least, apprised of the right on this date.
Evidence contained in the record further indicates that despite having already informed defendant of his right to a trial by jury at his arraignment, the trial court, at a waiver hearing held on May 24, 1999, again informed defendant of his constitutional right to be tried by a jury. In brief to this court, defendant points out that the minute entry contained in the record for May 24, 1999, "[m]akes no mention of a waiver." We agree that the minute entry fails to mention a waiver of the right to a jury trial; however, we find this minute entry inconsistent with the transcript of the proceedings held on that date, which is also contained in the record. While the minute entry in the record for May 24, 1999, suggests that the issue of right to jury trial never arose, the transcript reflects the following colloquy between the court and the defendant:
THE COURT: Mr. Brooks, state your name and date of birth.
MR. BROOKS: Ike Brooks, September 24th.
THE COURT: Mr. Brooks, you are charged with armed robbery. You have a right to have a twelve person jury trial. If you went to trial for armed robbery at least ten of those jurors must agree in order to find you not guilty or guilty. Do you want a jury trial where you would have peers from this community to come in and decide your fate or do you wish for me to decide?
MR. BROOKS: I want a judge trial.
THE COURT: All right. Let the record reflect that the defendant indicated that he wants the court to decide whether or not he is innocent and he is presumed innocent. All right. Your trial will be tomorrow at ten o'clock. You are to be here and ready to go to trial. Get your notice for tomorrow.
Despite the minute entry for May 24, 1999, it is evident from the transcript that defendant was advised of his right to a jury trial and expressly elected to be tried by the judge at this hearing. It is well settled that in the event of a discrepancy between the minutes and the transcript, the transcript prevails. See State v. Lynch, 441 So.2d 732, 734 (La.1983).
Furthermore, we note that in this appeal, defendant does not deny that he waived his right to a jury trial. Instead, he challenges the validity of the waiver, arguing that the colloquy conducted by the trial court prior to accepting the waiver was insufficient to support a determination that he knowingly and intelligently waived the right. Defendant avers that the record is silent on his ability to understand his options and to intelligently elect to waive his right to a jury trial. He further asserts that prior to accepting the waiver of such a fundamental constitutional right, the trial court was required to conduct a personal colloquy inquiring into defendant's educational background, literacy, and work history. Defendant appears to suggest that such a colloquy is necessary for the trial court to adequately assess the knowing and intelligent nature of a jury trial waiver. We disagree.
As is evident from the colloquy set forth above, the trial judge not only informed *78 defendant of his right to a jury trial, he also explained the mechanics of a jury trial. He informed defendant that armed robbery, the crimes he was charged with, requires a jury of twelve persons. He further explained that ten of the twelve jurors must agree in order to convict defendant of the crimes charged. As an alternative to a trial by jury, the judge explained that defendant could waive his right to trial by jury and have his case decided by the judge. In response, the defendant, while represented by counsel, elected to have the trial judge try his case.
In his reply brief, defendant attempts to further substantiate his claim that he did not knowingly and intelligently waive his right to a jury trial by arguing that the record does not indicate that he was represented by counsel at the May 24, 1999, waiver hearing. We find this argument unsupported by the record. Although the transcript of the May 24, 1999 hearing does not begin with the standard reporter's note, the cover of the transcript reflects that defendant was represented by attorney Marcie D'Jean, whose appearance at the hearing is noted therein. Furthermore, the minute entry for this date also indicates that defendant was present in court and represented by counsel at this hearing.
We disagree with defendant's contention that an extensive colloquy was required. While the trial judge must determine if the defendant's jury trial waiver is knowing and intelligent, that determination does not require a Boykin-like colloquy. See State v. Frank, 549 So.2d 401, 406 (La.App. 3d Cir.1989). While the Louisiana Supreme Court has rejected an absolute rule requiring the trial judge to personally inform defendant of his right to a jury trial, the preferred method of ensuring the right is for the trial judge to advise defendant personally on the record of his right to a jury and to require that defendant waive the right personally either in writing or by oral statement in open court on the record. State v. Roberts, XXXX-XXXX, p. 13 (La.App. 3 Cir. 10/3/01), 796 So.2d 779, 788.
Our review of the record reveals that on several occasions, the trial judge personally advised the defendant, who was represented by counsel, of his right to be tried by a jury. When the court inquired whether defendant wished to be tried by a jury of his peers, defendant unequivocally stated in open court and on the record that he wished to proceed with a bench trial. Despite defendant's claim that he has "limited education ability," there is no evidence in the record that defendant did not understand the right to a jury trial as repeatedly explained to him by the trial court. We find the trial court correctly accepted defendant's waiver as knowingly and intelligently made. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. TWO
In his next assignment of error, defendant argues that Judge Daniel erred in ruling that he could properly adjudicate defendant's motion for new trial, which required an evaluation of the testimony of witnesses heard by Judge Johnson. Defendant contends that because the motion for new trial required the reviewing judge to determine the impact of the new evidence and to weigh the testimonial evidence presented at the trial, Judge Daniel, who had not personally observed any trial testimony, could not decide the motion. He asserts that allowing Judge Daniel to make such an assessment from a "cold record" adversely affected his due process rights.
On June 13, 1999, prior to Judge Johnson's recusal, defendant filed a motion for new trial alleging: 1) the verdict rendered *79 by Judge Johnson was contrary to the law and evidence; and 2) defendant discovered new and material evidence that would have likely changed the outcome of the trial. Judge Johnson was recused from the case and replaced by Judge Daniel prior to ruling on the motion for new trial. Thereafter, defendant amended his new trial motion to allege that: 1) a legal defect existed in the proceedings, which did not exist before the verdicts; and 2) the ends of justice would be served by granting a new trial.
Following argument on the motion, Judge Daniel overruled defendant's objection, and ruled that he could properly hear the motion for new trial. In support of his ruling, Judge Daniel stated:
[W]hen you're looking at a motion for a new trial under section 1, the verdict is contrary to the law and the evidence, the new trialthe motion for a new trial must be reviewed. The court must review the weight of the evidence, and as such, make a factual determination as a thirteenth juror. Of course, any court that sat and heard the case and was any judge that sat and heard the case, who was the trial judge, was able to view the demeanor and the actual testimony of the witness, if it were a jury trial, the same as the jurors, if a judge trial, of course, the judge was able to see that. In this case it was a judge trial. However, the demeanor is one factor that the court is to use. There are other factors, and someit's arguable you can judge demeanor also to some extent I'm not sayingcertainly not as well as you canas looking at the witness, but from the answers and the questions in the transcript. I dobut I do not find that in such a case as this, that because a trial judge has been recused or if a trial judge has died that it is an impossibility for this court to do so. And I am at this point going to overrule the defense objection to proceeding based on those grounds, as I feel that I can go forward, and based on my review of the transcript, make the determination at least at this point I feel I can and review the weight of the evidence as basically another trier of fact in this case as the thirteenth juror standard as the law requires[.]
Subsequently, at the hearing on the motion for new trial, Judge Daniel expressly stated that he reviewed and considered the entire transcript of the trial, all of the physical evidence presented at trial, and all of the testimony and evidence presented at the hearing. The judge further stated that he reviewed the weight of the evidence and, acting as a thirteenth juror, made a determination that the verdicts were not contrary to the law and the evidence, and thereby denied defendant's motion for new trial on this ground.
On appeal, defendant argues that when the state prevailed on the motion to recuse, the case was placed in an impossible procedural posture because the judge assigned to replace Judge Johnson could not rule on the motion for new trial, which required weighing of the evidence. While Judge Johnson's recusal and the subsequent appointment of Judge Daniel to hear the post-trial motions in this case may have placed the case in an irregular procedural posture, contrary to defendant's claim, such a posture is not an impossible one. In 1962, in the case of State v. Henderson, 243 La. 233, 142 So.2d 407 (1962), cert. denied, 371 U.S. 942, 83 S.Ct. 324, 9 L.Ed.2d 276 (1962), our supreme court addressed the issue of whether a judge substituted after the verdict may rule on a pending motion for new trial. While recognizing that the substitution of judges during criminal proceedings is undoubtedly irregular, the supreme court *80 found that such an irregularity did not result in a miscarriage of justice, nor did it prejudice the substantial rights of the accused. In that case, the supreme court held that the successor judge, assigned after the trial was closed due to the untimely demise of the original trial judge, could properly rule upon the pending motion for new trial and motion in arrest of judgment.
The instant case was adjudicated as a bench trial, with Judge Johnson presiding. Prior to his recusal, Judge Johnson rendered a verdict wherein he found the defendant guilty as charged. Following Judge Johnson's recusal, Judge Daniel was assigned for the purpose of deciding the pending post-trial motions and sentencing. Under these circumstances, we find, as did the supreme court in Henderson, that the substitution of judges after the close of trial did not prejudice any substantial rights of the defendant, nor did it result in a miscarriage of justice. The record in this case clearly indicates that prior to ruling on the motion for new trial, Judge Daniel reviewed and considered the entire trial transcript, all of the physical evidence presented at trial, as well as the testimony and evidence presented at the hearing on the motion. Judge Daniel's ruling on the motion for new trial did not deprive defendant of any constitutional right. Furthermore, defendant's constitutional due process rights were adequately protected by Judge Daniel's review of the entire record and all evidence contained therein.
Therefore, contrary to defendant's assertions, we do not find that the supreme court's holding in Henderson necessitates a reversal in this case. In fact, we find that the holding in Henderson clearly supports our determination that a judge substituted after the verdict may hear and determine a post-trial motion for new trial. In Henderson, the supreme court recognized the following rule of law as applicable:
`While statutory and decisional authority permits substitution to take place in a criminal case subsequent to the receipt of the verdict for the purpose of hearing motions and passing sentence, in the absence of any likelihood of prejudice to the defendant, however, the practice of substituting judges to hear motions for a new trial, suspending or imposing sentence should be confined solely to cases of necessity. The parties to the litigation, which includes the commonwealth, ordinarily possess an undoubted right to have the judge who heard the evidence and witnessed all that took place in the courtroom, help to decide the motion, pass judgment, suspend or impose sentence. The sentencing or suspension thereof of a person convicted of crime is a judicial act of serious import in the administration of justice, and can only be performed by the judge who tries the case, except in cases of imperative necessity. After the imposition of sentence by the court, the prisoner becomes a charge upon the state and enters its custody. In no event should a substitution or replacement after verdict ever be permitted except under unavoidable circumstances, such as sickness, impossibility to act, or other substantial cause which would make the continuance of the trial judge's presence impossible. This is especially true in capital cases where life may be at stake.' (Citations omitted)
State v. Henderson, 142 So.2d at 409-410.
Applying this rule of law to the instant case, we find that Judge Johnson's recusal made it impossible for him to take any further action in the case, thus making substitution an "imperative necessity." Furthermore, defendant was not prejudiced by the substitution of one judge for *81 another judge, when the substitution occurred after the verdict. Such a substitution does not entitle defendant to an automatic new trial. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. THREE
By this assignment, defendant contends Judge Daniel erred in denying his motion for new trial despite strong credible evidence that he did not commit the armed robberies. On review, we note defendant's motion was based on four grounds: 1) the verdict was contrary to the law and evidence; 2) defendant discovered new and material evidence that would have changed the outcome of the trial; 3) a legal defect existed in the proceedings that did not exist prior to the verdict; and 4) the ends of justice would be served by granting a new trial. Defendant's argument that a legal defect in the proceedings prevented Judge Daniel from adjudicating his motion for new trial (ground number 3) has been addressed in assignment of error number two and will not be re-addressed here. The denial of the motion for a new trial based on the interests of justice (La. Code Crim. P. art. 851(5)) is not reviewable on appeal; thus, we will not consider this ground. State v. Walder, 504 So.2d 991, 994 (La.App. 1st Cir.), writ denied, 506 So.2d 1223 (La.1987). Likewise, we will not consider defendant's ground number one because the denial of a motion for new trial based upon La.Code Crim. P. art. 851(1) is not subject to review on appeal.[1]State v. Moody, XXXX-XXXX, p. 5 (La.App. 1 Cir. 12/22/00), 779 So.2d 4, 8, writ denied, XXXX-XXXX (La.12/7/01), 803 So.2d 40.
Therefore, in this assignment, we only address defendant's remaining ground for new trial, newly discovered evidence. Under Louisiana jurisprudence, in order to obtain a new trial based on newly discovered evidence, the defendant has the burden of showing: (1) the new evidence was discovered after trial; (2) the failure to discover the evidence at the time of trial was not caused by lack of diligence; (3) the evidence is material to the issues at trial; and (4) the evidence is of such a nature that it would probably have produced a different verdict. State v. Smith, 96-0961, p. 7 (La.App. 1 Cir. 6/20/97), 697 So.2d 39, 43. In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another trier of fact might render a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. The trial court's denial of a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Henderson, 99-1945, pp. 15-16 (La.App. 1 Cir. 6/23/00), 762 So.2d 747, 758, writ denied, 2000-2223 (La.6/15/01), 793 So.2d 1235.
After a careful review of the record, we find that defendant has not met all the requisites for obtaining a new trial based upon newly discovered evidence. First, we do not find that the evidence in question constitutes "new" evidence. In his motion, defendant, as required by La. Code Crim. P. art. 854, provided the name of a dentist who he alleged would testify that defendant's front teeth were capped with gold in 1998, after the date of the robberies.[2] While this evidence may *82 have been relevant to the issue of identity, defendant failed to show that, notwithstanding the exercise of reasonable diligence, the evidence was not discoverable before or during trial. The record reveals that at the initial hearing on the motion for new trial held before Judge Johnson, defense counsel indicated that she tried to get in touch with the dentist on the afternoon before defendant's trial, without success. Clearly then, defendant was aware of this evidence prior to his trial. A motion for new trial is properly rejected when it is based on evidence that should have, with reasonable diligence, been discovered before or during trial. State v. Henderson, 99-1945 at p. 17 n. 3, 762 So.2d at 759 n. 3. We find no abuse of discretion in the trial court's denial of defendant's motion for new trial on this ground. This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. FOUR
In his final assignment of error, defendant contends that Judge Anderson erred in recusing Judge Johnson from presiding in this case when the state failed to prove significant evidence of bias.
Following defendant's conviction, the state filed a motion to recuse Judge Johnson alleging that the judge held various ex parte conversations with defense counsel in this case, which caused him to become personally interested in the case to such an extent that he was no longer able to remain impartial. The state alleged that several comments made by Judge Johnson to both the prosecuting attorney and defense counsel indicated that the judge prejudged the issue of a new trial prior to hearing all of the evidence. Judge Johnson referred the motion to Judge Richard Anderson, another 19th Judicial District Court judge, for an impartial hearing. Following a contradictory hearing, Judge Richard Anderson, over defense objection, ordered Judge Johnson recused from presiding in the case. The case was reassigned to Judge Daniel. Defendant filed a supervisory writ application with this court seeking review of the trial court's ruling recusing Judge Johnson. In an unpublished decision, this court denied the writ application. State v. Brooks, XXXX-XXXX (La.App. 1 Cir. 7/28/00). Defendant then filed a supervisory writ application with the Louisiana Supreme Court, which was also denied. State v. Brooks, 2000-2376 (La.11/3/00), 773 So.2d 147. Following the supreme court's denial of defendant's writ, Judge Daniel presided over all post-trial motions and sentencing in the case.
By this assignment of error, defendant again seeks review of the ruling to recuse Judge Johnson. The assignment of error presents no new argument. The record in this case fully supports our previous decision on the issue presented in the writ application and is devoid of any additional evidence that would lead us to change the conclusion we reached therein. Accordingly, we maintain our previous finding that Judge Anderson did not err in recusing Judge Johnson from presiding in this matter. This assignment of error is without merit.
For the foregoing reasons, defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[*] Judge William F. Kline, Jr., Retired, serving Pro Tempore by special appointment of the Louisiana Supreme Court.
[1] Although defendant filed a motion for post verdict judgment of acquittal challenging the sufficiency of the evidence, on appeal he does not request that this court review the sufficiency of the evidence.
[2] Defendant's motion for new trial also includes an allegation that witnesses existed who would testify that the victims gave statements inconsistent with their trial testimony. However, the motion fails to list the names of the witnesses or the alleged inconsistent statements of the victims.