NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT**

**DOCKET NUMBER
2022 KA 1191**

**STATE OF LOUISIANA**

**VERSUS**

**SHURAY D. WELLS**

Judgment Rendered: JUL 2 4 2023

* * * * *

**ON APPEAL FROM THE
19th JUDICIAL DISTRICT COURT, SECTION 8
EAST BATON ROUGE PARISH, LOUISIANA
DOCKET NUMBER 06-17-0546**

**HONORABLE TIFFANY FOXWORTH-ROBERTS, JUDGE PRESIDING**

* * * * *

Jane L. Beebe
Addis, Louisiana

Attorney for Appellant
Shuray D. Wells


Hillar C. Moore, III
District Attorney
and
Allison Miller Rutzen
Assistant District Attorney
Baton Rouge, Louisiana

Attorneys for Appellee
State of Louisiana

**BEFORE: McCLENDON, HOLDRIDGE, AND GREENE, JJ.**

Holdridge J. concurs w/ Reasons

**GREENE, J.**

The State charged the defendant, Shuray D. Wells, with one count of second degree rape, a violation of La. R.S. 14:42.1, and he pled not guilty. The defendant later waived his right to a jury trial, and, after a bench trial, the trial court found him guilty of the responsive offense of sexual battery, a violation of La. R.S. 14:43.1.[1] The trial court sentenced him to seven years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. The defendant now appeals, contending the trial court erred: by finding he validly waived his right to a jury trial, by allowing other crimes evidence at trial, and in admitting hearsay evidence. For the following reasons, we affirm his conviction and sentence.[2]

## FACTS

The victim, D.V.,[3] testified at trial that she and her friend, Logan, were homeless. Before the incident, D.V. and Logan had been sleeping near a levee in Baton Rouge, Louisiana. However, on April 6, 2017, Logan was staying at a shelter and there were no women's shelters available. Logan introduced D.V. to Buck, another homeless person, who told D.V. that she could stay with him at an abandoned house on North Boulevard.[4] While Buck and D.V. were returning to the house with groceries, the defendant offered Buck a cart to carry the groceries. D.V. had never met the defendant but heard Buck say his name was "Ray-Ray."

When D.V. and Buck arrived at the abandoned house, the only other person there was an African-American woman. D.V. went to an empty room upstairs and went to sleep. According to D.V., she woke to someone groping her breasts. Thinking it was Buck, she stated, "What the heck, bro?" She then saw that it was defendant, who stated, "Shut up

---

[1] A May 6, 2019 minute entry indicates the trial court found the defendant guilty as charged. The transcript, however, indicates the trial court found the defendant guilty of the responsive offense of sexual battery. When there is a discrepancy between the minutes and the transcript, the transcript must prevail. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

[2] Judge Trudy White, now retired, conducted the bench trial, found defendant guilty, and sentenced him. Judge Tiffany Foxworth-Roberts, Judge White's successor, granted defendant's appeal.

[3] As the crime at issue is a sex offense, we identify the victim by her initials. *See* La. R.S. 46:1844(W)(3).

[4] In the record, the location of the abandoned house is identified as North Boulevard and as North Street. For consistency, we use North Boulevard.

or I'll kill you." D.V. told the defendant, "You can't do this, this just happened to me."[5] The defendant grabbed D.V.'s jaw and put his penis in her mouth. D.V. again told the defendant, "Please God, don't do this." The defendant replied, "I am God." According to D.V., the defendant ejaculated in her hair and then told her to go fix him something to eat. D.V. testified she was afraid and cooperated so she could "figure out how to get out of [there]." D.V. prepared food for the defendant, brought it to him, told him she needed to use the bathroom downstairs, and ran away.

The defendant also testified at trial and gave the following account of the incident. He first stayed at the abandoned house with his friend Buck two months prior to the incident and kept clothes there. On April 7, 2017, at approximately 1:00 a.m., he saw D.V. sleeping on the floor at the house with his blankets. He claimed he put his hand on her chest and shook her, which caused her to startle and jump up. The defendant noticed stitches in the middle of D.V.'s forehead and asked her about them. He claimed he almost cried when D.V. told him how she had been raped. He told D.V. to give him one of the blankets, took it, and sat "on the wall." He talked to D.V. for about 30 minutes and then pulled out a cigarette. He claimed D.V. also wanted a cigarette and came and sat beside him after he told her he would give her half of his cigarette. The two continued talking, and, according to the defendant, D.V. then began rubbing his penis. The defendant claimed his semen got into D.V.'s hair accidentally as he was trying to stand up. He stated he later told D.V. he was hungry, and she fixed him lasagna. He denied putting his penis in D.V.'s mouth.

## JURY TRIAL WAIVER

In assignment of error number one, the defendant contends the trial court erred in finding that he validly waived his right to a jury trial. He argues the trial court should not have considered his spontaneous statement that he wanted a "judge trial, right now," made during his preliminary examination, to be a valid jury trial waiver. He further argues his colloquy with the trial court should be disregarded because the trial court had "obvious misgivings" regarding his competency.

---

[5] D.V. had been beaten and raped in an unrelated incident three days earlier. As a result of that attack, she had stitches in her head.

3

A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. La. C.Cr.P. art. 780(A). The defendant shall exercise his right to waive trial by jury in accordance with Louisiana Constitution Article I, §17. The waiver shall be by written motion filed in the district court not later than 45 days prior to the date the case is set for trial. The defendant and his counsel shall both sign the motion, unless the defendant has waived his right to counsel. *See* La. C.Cr.P. art. 780(B). With the consent of the district attorney, the defendant may waive trial by jury within 45 days prior to the commencement of trial. La. C.Cr.P. art. 780(C). A defendant's waiver of trial by jury is irrevocable and cannot be withdrawn. La. Const. art. I, §17(A); La. C.Cr.P. art. 780(D). A waiver of this right is never presumed. However, no special form is required for a defendant to waive his right to a trial by jury. *State v. Coleman*, 09-1388 (La. App. 1 Cir. 2/12/10), 35 So.3d 1096, 1098, *writ denied*, 10-0894 (La. 4/29/11), 62 So.3d 103.

On June 26, 2017, the trial court arraigned the defendant and set the matter for a sanity hearing. On December 14, 2017, the defendant appeared in court with counsel for a preliminary examination and sanity hearing.[6] At the hearing, without being prompted, the defendant stated, "Judge trial, right now" and "I think a judge trial right now." The trial court asked the defendant for his name and address, which he provided. The trial court then advised the defendant that he should consult with his attorney before deciding whether to have a judge or jury trial. The trial court commented that the defendant may need to be evaluated by medical professionals. Defense counsel and the State informed the trial court that the defendant had been evaluated and found competent. Thereafter, defense counsel informed the trial court that the defendant "wants to waive a jury."

The trial court then questioned the defendant concerning his age (42 years), whether he understood the English language (affirmative response), his level of education (ninth grade), and whether he could read and write (affirmative response). Additionally, the trial court engaged in the following colloquy with the defendant:

---

[6] A September 5, 2017 minute entry indicates that the sanity hearing was continued from that date to December 14, 2017.

4

[Court]:	All right. I do want to advise you that you have a right to a trial by jury composed of your peers. Should you elect to be tried by a jury, you through your attorney would have the opportunity to ask questions of individuals to determine whether those individuals should be selected to serve on a jury. In a jury trial[,] the members of the jury will determine whether to convict or acquit you. If you choose to waive your right to a trial by jury, I alone will decide your guilt or innocence. Do you understand what I have just said?

[Defendant]: Yes, ma'am.

[Court]:	Do you still wish to waive your right to be tried by a jury?

[Defendant]: Yes, ma'am.

[Unidentified female voice]: Judge, not by a jury.

[Court]:	Waive your right to -- to be tried by a jury?

[Defendant]: Yes, ma'am.

[Court]:	All right. So the court finds that you have intelligently and knowingly waived your right to a trial by jury. Okay? So, should it go to trial, I will determine the question of guilt or innocence. Do you understand that?

[Defendant]: Yes, ma'am.

On November 9, 2018, the bench trial was scheduled to begin. The defense filed a written waiver of jury trial. Before the trial began, defense counsel also raised the issue of the defendant's mental capacity to go to trial.[7] Counsel stated the defendant thought he was going to have a trial and then go home. Counsel asked the trial court to inquire into the defendant's mental ability to understand his waiver.

The trial court then re-questioned the defendant concerning his age, his ability to understand the English language, and his educational level, and the defendant provided the same responses as he had given at the December 14, 2017 hearing, adding that he had a GED. Thereafter, the trial court asked him whether he understood that his bench trial was about to start. The defendant answered affirmatively. The trial court asked the defendant to explain his understanding of a bench trial. He replied, "That means that the judge, educated judge, [is] gonna listen to my story and listen to another person's story and determine who [is] telling the truth." The trial court explained to the defendant that, at a trial, he would have the choice of whether or not to testify, and asked him if he understood

---

[7] On January 17, 2019, the trial court ruled the defendant was competent.

5

he did not have to testify. The defendant replied, "I came to tell you what happened here, Your Honor."

The trial court again advised the defendant of his right to a trial by jury. The trial court stated that, if the defendant wanted a jury trial, no trial would take place that day because no prospective jurors had been called. The defendant asked how quickly a jury trial could be held. The trial court responded that a jury trial could be held sometime in the next year. The trial court judge told the defendant she was concerned about whether he understood what was going on, and whether he had the capacity to exercise good judgment choosing between a jury trial and a bench trial, and she was trying to evaluate if she needed to have a medical professional talk to him again.

The trial court asked the defendant if he understood that, even if he had a trial, it did not mean he would necessarily go home afterwards because he could be found guilty. The defendant replied, "Well, that's understandable[,] but if I'm found not guilty, I get to go home." The trial court added, "If you are acquitted, yes, [s]ir." The defendant stated he was going with convenience because he had been in jail too long. He further stated he did not see it taking "them" more than ten minutes. The trial court replied that a trial would take more than ten minutes and that the State only tried cases that it considered to be strong.

Thereafter, defense counsel asked the defendant whether he understood that he had a right to speedy trial and did not have to give up his right to a jury trial. Contrary to his earlier position, the defendant stated that he was going to listen to the advice of his lawyer and requested a jury trial. The State objected to allowing the defendant to rescind his jury trial waiver, arguing he validly made the waiver after the trial court made adequate inquiry, and the defendant knew what he was doing. The State argued that the defendant was changing his mind rather than failing to understand his rights. The trial court granted defendant's request not to go forward with a bench trial and indicated it would reschedule the matter for a jury trial.

On December 10, 2018, the State filed a motion to reconsider the ruling allowing the defendant to revoke his jury waiver. On January 17, 2019, the trial court held a hearing on the matter, granted the State's motion and reinstated defendant's bench trial.

6

After thoroughly reviewing the record, we find the trial court properly found the defendant made a valid and irrevocable jury trial waiver. At the December 14, 2017 hearing, the trial court thoroughly examined the defendant concerning his age, ability to understand the English language, educational level, literacy, and fully explained his right to jury trial before accepting the jury trial waiver from him. There is no basis in the record to disregard the trial court's detailed and repeated questioning of the defendant and his answers. The defendant knowingly and intelligently waived his right to trial by jury. *Accord State v. Brooks*, 01-1138 (La. App. 1 Cir. 3/28/02), 814 So.2d 72, 78, *writ denied*, 02-1215 (La. 11/22/02), 829 So.2d 1037 (finding the trial court correctly accepted a defendant's jury trial waiver as knowingly and intelligently made, when there was no evidence that defendant did not understand the right, and the trial court had repeatedly explained it to him). Indeed, the trial court's subsequent questioning of the defendant, on November 9, 2018, further indicated his jury trial waiver was knowing and intelligent. The trial court told the defendant it did not want him to be naïve and underestimate the prospect or the possibility that, if the State proved every element of its case, it would find him guilty. The trial court added, however, if the State failed to prove every element of its case, it would find him not guilty. The defendant replied, "Yes, ma'am. That's exactly what you told me December 14th, that you [weren't] gonna have no problem saying guilty. And I said, yes, ma'am." Based on the above, we conclude the defendant's jury trial waiver was irrevocable.

Thus, because the defendant's valid jury trial waiver was irrevocable, the trial court acted contrary to law on November 9, 2018, by allowing the defendant to revoke his jury trial waiver. *See* La. Const. art. I, §17(A); La. C.Cr.P. art. 780(D); *State v. Gibson*, 15-0682 (La. App. 4 Cir. 1/27/16), 186 So.3d 772, 785, *writ denied*, 16-0407 (La. 2/17/17), 216 So.3d 51 (finding a trial court did not err in denying a defendant's motion to reinstate his right to a jury trial, because the facts demonstrated that he waived that right, which was irrevocable under La. Const. art. I, §17(A)). Accordingly, on January 17, 2019, the trial court did not abuse its discretion in reversing its prior ruling and finding that the defendant's jury trial waiver was in fact valid and irrevocable. This assignment of error is without merit.

7

## OTHER CRIMES EVIDENCE/HEARSAY

In assignment of error number two, the defendant contends the trial court erred in allowing D.V. to testify about Buck's statement that the defendant hit him in the head with a brick. The defendant claims this testimony constitutes impermissible other crimes evidence. In assignment of error number three, the defendant contends the trial court erred in admitting this same evidence because it is hearsay. The defendant notes that the parties had agreed not to call Buck as a witness in the defendant's trial.[8]

Evidence of other crimes, wrongs, or acts committed by the defendant is generally inadmissible because of the substantial risk of grave prejudice to the defendant. La. C.E. art. 404(B); *State v. Calloway*, 18-1396 (La. App. 1 Cir. 4/12/19), 276 So.3d 133, 147, *writ denied*, 2019-00869 (La. 1/20/21), 308 So.3d 1164. It is well-settled that courts may not admit evidence of other crimes to show the defendant as a person of bad character who has acted in conformity with his bad character. *Calloway*, 276 So.3d at 147. However, evidence of other crimes, wrongs, or acts may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. *See* La. C.E. art. 404(B)(1). Even when the other crimes evidence is offered for these other allowed purposes, the evidence is only admissible if it tends to prove a material fact at issue or to rebut a defendant's defense. *Calloway*, 276 So.3d at 147. The State bears the burden of proving that the defendant committed the other crimes, wrongs, or acts. *Id.*

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. La. C.E. art. 402. Evidence that is not relevant

---

[8] Prior to trial, an issue arose concerning a potential conflict of interest with the Office of the Public Defender representing the defendant after previously representing Jonathan Kerr or Kirk, a/k/a Buck, after he was charged with burglary of the abandoned house where the incident occurred. The State promised not to call Buck as a witness in the instant trial, and the trial court accepted the solution over defense objection. Thereafter, this Court denied the defendant's application for supervisory relief on the ruling finding "[a]n actual conflict does not exist where the parties have agreed on the record not to call the witness in question at trial." *State v. Wells*, 19-0118 (La. App. 1 Cir. 2/11/19), 2019 WL 549593.

is not admissible. *Id.* Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Absent an abuse of discretion, this Court will not disturb a trial court's ruling on the admissibility of other crimes evidence. *State v. Hicks*, 22-0350 (La. App. 1 Cir. 11/4/22), 354 So.3d 715, 719, *writ denied*, 22-01749 (La. 4/12/23), 359 So.3d 29.

At trial, after D.V. stated she had heard Buck identify the defendant as Ray-Ray, the State asked her if Buck had shared some other information about the defendant. D.V. answered affirmatively, and the State asked if the information caused D.V. to feel a certain way about the defendant. D.V. answered, "Absolutely terrified." Later, the State asked D.V. why she thought the defendant was going to hurt or kill her when she saw him after the incident. D.V. replied, "Because of what I had heard." Rather than obtain any details from D.V. concerning what she had heard, the State stated, "Okay. We'll leave it at that so we don't get into hearsay, okay?"

On cross-examination, the defense asked D.V. why she prepared food for the defendant after the rape, rather than immediately running away when she was alone in the kitchen, where there was an exit to the outside. The defense also asked D.V. why she had not screamed during the rape. D.V. answered that Buck was a kid in her mind, she was a mom, and she did not want him to get hurt.

On re-direct examination, D.V. indicated that something Buck told her about the defendant added to her concern that Buck not get hurt. The State then asked D.V. to describe what Buck told her, at which point the defense objected, claiming such would be hearsay. In response, the State argued that, although Buck's statement to D.V. would include other crimes evidence, the defense had opened the door to that evidence, *i.e.*, by asking D.V. why she fixed food for the defendant, why she did not run, and why she had not screamed during the incident. The State also argued that the evidence was not hearsay, because it went to D.V.'s state of mind and her fear of the defendant. The trial court denied the defense objection, and the defense objected to the ruling. Thereafter, D.V. testified that Buck told her the defendant had hit him in the head with a brick, requiring staples in

9

the back of his head. According to D.V., this made her afraid of the defendant and afraid for Buck.

The next day, the defense moved for a mistrial, arguing the State had agreed that Buck would not testify and that his statements would not be offered into evidence. Thereafter, the trial court denied the motion for mistrial.

On appeal, the defendant relies upon *Calloway*, which involved review of a first degree murder conviction involving the fatal shooting of the victim during a robbery. *Calloway*, 276 So.3d at 140. Therein, at trial, the State claimed the defendant was one of two young men who had committed robberies unrelated to the instant offense in which meal delivery drivers were approached, severely beaten, and robbed of money and food. *Calloway*, 276 So.3d at 148-49. The *Calloway* court found the evidence of the unrelated robberies inadmissible as proof of identity/system, plan, intent, or for any other permissible purpose. *Calloway*, 276 So.3d at 148-49. Additionally, the *Calloway* court found the evidence to have been impermissibly introduced to attack the character of the accused and that the error was reversible. *Calloway*, 276 So.3d at 149-50.

*Calloway*, however, is distinguishable from the instant case, because it involved a jury trial rather than a bench trial. *Calloway*, 276 So.3d at 140. In a bench trial, unlike a jury trial, the trial judge is well versed in the rules of evidence and is, therefore, trained to give the proper weight to evidence. *State v. Piper*, 18-1796 (La. App. 1 Cir. 9/27/19), 287 So.3d 13, 21. Moreover, unlike in *Calloway*, the challenged evidence here was offered to prove something other than that the defendant was a man of bad character who had acted in conformity with his bad character. To prove the offense charged, the State had to prove that D.V. was prevented from resisting the rape by force or threats of physical violence under circumstances where she reasonably believed her resistance would not prevent the rape. *See* La. R.S. 14:42.1(A)(1). It was reasonable for D.V. to believe that the defendant would overcome any resistance from her with violence, because she believed he had used violence against Buck by hitting him in the head with a brick.[9] Thus, D.V.'s testimony

---

[9] Evidence offered under La. C.E. art. 404 may include not only convictions, but also unadjudicated acts committed by the defendant. *State v. Colbert*, 07-0947 (La. App. 4 Cir. 7/23/08), 990 So.2d 76, 89, *writ denied*, 08-2098 (La. 5/15/09), 8 So.3d 579. Additionally, there is no requirement in the law that the victim of the instant offense and the victim of the other crimes evidence or acts be the same person. *State v. Lagarrigue*, 16-0203 (La. App. 1 Cir. 9/16/16), 2016 WL 4942430, *4.

concerning her knowledge of the defendant's violence against Buck was directly probative of an element of the offense and proved a material fact at issue, *i.e.*, D.V. reasonably believed that her resistance to defendant would not prevent the rape. The prejudice to the defendant from the testimony was limited in that it did not involve sexual misconduct against a female. Thus, the probative value of the evidence outweighed its prejudicial effect.

Further, the defense opened the door to D.V.'s testimony by questioning why she failed to scream during the rape, and why she prepared food for the defendant thereafter, instead of running away. Rebuttal evidence is evidence that has become relevant or important only as an effect of some evidence introduced by the other side. *State v. Davis*, 16-1524 (La. App. 1 Cir. 7/05/17), 2017 WL 2858930, *9, *writ denied*, 17-1440 (La. 5/18/18), 242 So.3d 573, *cert. denied*, ___ U.S. ___, 139 S.Ct. 1569, 203 L.Ed.2d 731 (2019). The governing statutory provision on rebuttal evidence is La. C.E. art. 611(E), which provides that "the [S]tate in a criminal prosecution shall have the right to rebut evidence adduced by their opponents." In other words, where defense counsel went on cross-examination, the State has the right to follow on redirect. *Davis*, 2017 WL 2858930 at *9.

Moreover, even if we were to determine that D.V.'s reference to Buck stating that the defendant hit him in the head with a brick constituted impermissible other crimes evidence, we note the introduction of such evidence results in a trial error subject to a harmless error analysis. *State v. Brown*, 18-01999 (La. 9/30/21), 330 So.3d 199, 236, *cert. denied*, ___ U.S. ___, 142 S.Ct. 1702, 212 L.Ed.2d 596 (2022). The test for determining whether an error is harmless is whether the verdict actually rendered in this case "was surely unattributable to the error." *Brown at 236*, relying on *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).

We note that the evidence in this case consisted of very detailed claims by D.V. As earlier noted, in a bench trial, the trial judge is well versed in the rules of evidence and is, therefore, trained to give proper weight to evidence. *Piper*, 287 So.3d 13 at 21. There is no indication that the trial judge was unable to discern and distinguish the acts constituting the instant offense from D.V.'s brief reference to the alleged incident involving Buck. We are convinced that the verdict rendered in this case was unattributable to any error in the admission of the above referenced statements. We further conclude that the drastic remedy

of a mistrial was not warranted in this case.[10] *See State v. Falgout,* 21-1548 (La. App. 1 Cir. 6/6/22), 2022 WL 1961593, *6.

Finally, the defendant contends that D.V.'s testimony regarding Buck's statements was inadmissible hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(B) and (C). One of the primary justifications for the exclusion of hearsay is that the adversary has no opportunity to cross examine the absent declarant, in this case Buck, to test the accuracy and completeness of the testimony. *State v. Alexander,* 21-1346 (La. App. 1 Cir. 7/13/22), 344 So.3d 705, 720. In the instant case, however, the issue was not whether the defendant actually hit Buck with a brick (the defendant was not on trial for that alleged offense), but rather, whether D.V. reasonably believed her resistance to Buck would not prevent the rape. *See* La. R.S. 14:42.1(A)(1). It was reasonable for D.V. to believe that the defendant would overcome any resistance from her with violence because she *believed* he had used violence against Buck. Whether or not the defendant *actually* hit Buck with a brick was irrelevant. Accordingly, D.V.'s testimony concerning her knowledge of the alleged act was not offered to prove the truth of the matter asserted, and thus, was not hearsay.

These assignments of error are without merit.

## CONCLUSION

For the foregoing reasons, we affirm the defendant's conviction and sentence.

---

[10] Under certain circumstances, the admission of other crimes evidence warrants the granting of a mistrial. *See* La. C.Cr.P. arts. 770, 771, and 775. Under La. C.Cr.P. art. 771, a trial court may grant a mistrial when the prejudicial remarks of a witness who is not a court official make it impossible for a defendant to obtain a fair trial. However, a mistrial is a drastic remedy that the trial court should grant only when a defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. Thus, a mere possibility of prejudice is not sufficient. The trial court has sound discretion in determining whether a mistrial should be granted, and, on appeal, the Court will not disturb a trial court's denial of a motion for mistrial without abuse of that discretion. A reviewing court may only reverse a defendant's conviction and sentence when the error has affected the substantial rights of the accused. *See* La. C.Cr.P. art. 921; *Falgout,* 2022 WL 1961593 at *3.

# STATE OF LOUISIANA
# COURT OF APPEAL
# FIRST CIRCUIT

## DOCKET NUMBER
## 2022 KA 1191

## STATE OF LOUISIANA

## VERSUS

## SHURAY D. WELLS



**HOLDRIDGE, J., agreeing in part and concurring in part.**

I agree in part with the opinion and concur in part. I agree that the trial court was correct in finding that the defendant properly waived his right to a jury trial. I further find that the trial court erred in admitting the other crimes/hearsay evidence. Even if the evidence was not offered for the truth of the matter asserted but to show what the victim actually believed, such evidence should have been excluded under La. C.E. art. 403 because the prejudicial effect (of showing that the defendant may be a violent person) far exceeded its probative value. Furthermore, any evidence of what Jonathan Kerr or Kirk, a/k/a Buck, may have said should not have been admitted into evidence under any circumstances because the trial court did not allow Buck to be called as a witness. The trial court's ruling prohibited the defendant from cross-examining Buck about his alleged statement. However, I concur with the majority's finding that any evidence improperly admitted was harmless error. See State v. Brown, 2018-01999 (La. 9/30/21), 330 So.3d 199, 236, cert. denied, ___ U.S. ___, 142 S.Ct. 1702, 212 L.Ed.2d 596 (2022).