DREW, J.
hAt bench trial, Fredrick Harris was tried on five charges initiated by secret indictment of a Caddo Grand Jury:
• Forcible Rape;
• Two counts of Public Bribery;
• Malfeasance in Office; and
• Molestation of a Juvenile.
*763 Harris was convicted of two crimes: Forcible Rape and one count of Public Bribery. On the Forcible Rape conviction, he was sentenced to iVh years at hard labor, with the first three years to be served without benefits. On the Public Bribery conviction, he was sentenced to serve one year at hard labor. The two sentences were ordered to be served concurrently. We affirm the convictions and sentences.

FACTS

Most of the facts of this case are not seriously in dispute, as much of what happened was captured by the motor vehicle surveillance system in the defendant’s patrol car. Between the audio and video recordings made by this machinery, together with the trial testimony, here is what happened:
• at the time of these crimes, the defendant was a patrol officer with the Shreveport Police Department (“S.P.D.”);
• at approximately noon on January 16, 2003, while in an S.P.D. vehicle, he pulled over a car being driven by L.T., a young woman, for a traffic offense;
• L.T.’s roommate was a passenger in her car;
• Officer Harris radioed in and determined that L.T. had two misdemeanor warrants outstanding;
• he arrested and handcuffed L.T., putting her into the back of his patrol car to take to jail;
• the roommate was left with the vehicle at the scene;
!;>• L.T. asked Harris how much it was going to cost to get out of jail, to which he responded that it would take about $200;
• the defendant radioed to the police station that he was en route with an arrested black female;
• approximately a minute later, contrary to S.P.D. policy, Harris turned off the audio and video recording system in his patrol ear;
• the defendant never arrived at the jail with L.T.;
• no citation was ever issued for the traffic stop; and
• L.T.’s warrants were not satisfied.
L.T. testified at trial that:
• after the defendant turned off the tape, he told her that it was her lucky day, that he was no longer the arresting officer, but was going to be her bail bondsman;
• when she asked what he meant, Harris told her that she would pay him to get out of jail, and she would save money instead of going through the process;
• Harris made a U-turn and took her to a deserted area;
• he took her out of the patrol car, reached into her pocket, and took out her money, keeping $200 and returning the rest;
• he put the $200 in the car’s sun visor, then put her back into the car;
• he drove her back to where her car had been stopped, but in the meantime, her roommate had apparently driven off;
• she asked him for a ride home;
• he told her that this “... was a police car, that he wasn’t fixing to be doing no free-ass riding around, that [she] was going to have to f**k or do something”;
• she did not respond to this;
• Harris turned his car around and drove up a hill to a secluded area;
• she noticed that he was wearing a black condom;
• Harris had her recline on the back seat;
*764 |3« he pulled her jeans down and had intercourse with her, without her permission;
• she did not resist or struggle because she was in handcuffs and because the officer/rapist was armed;
• he took her home, at first insisting that she and her boyfriend give him $60 for her license plate;
• her boyfriend produced proof of insurance, whereupon Harris dropped the $60 demand and left;
• she told her boyfriend that the defendant had taken her money and had raped her;
• Harris came back to her home several times during the day;
• she was afraid that if she called 911, the defendant, apparently staying close to her home, would hear about it on his radio; and
• her boyfriend called 911 and made a complaint.
In response to the complaint, a search warrant was issued for the defendant’s patrol car and his home. In his patrol car, officers found $882 in cash in the ear’s sun visor. In the patrol ear’s trunk, officers found packages of black condoms and K-Y Jelly. The search also revealed a quantity of traffic tickets that had been filled in, but had not been turned in or properly voided.
The victim was a shaky witness, giving at least three different accounts of these events. Sergeant Dennis Pratt, with the sex crimes unit of the Shreveport Police Department, testified about his interviews with the victim.
In the first interview, she was primarily concerned with her missing money, denying that anything sexual occurred. Sergeant Pratt noted that she cried when questioned about having intercourse with the defendant. He felt |4she was not telling him the truth. He told her that if she were found to be lying about having sex with the officer, no one would believe her about the missing money. When Pratt took L.T. to jail for booking on the outstanding warrants, she told him she wanted to go back on tape.
In the second statement, L.T. again denied having sexual intercourse with the defendant, though she admitted he had molested her by touching her vagina and fondling her breasts. Harris was arrested.
Another victim later came forward, alleging that when she was 16 years old, Harris had molested her while transporting her to a juvenile shelter. Harris was also charged with this crime, but was subsequently acquitted.
The defendant was charged with forcible rape of L.T., sexual battery of the juvenile, two counts of public bribery, and one count of malfeasance in office. On April 26, 2004, the defendant appeared in open court with his counsel, and waived his right to a jury trial. The trial court fully advised the defendant of his rights in this regard, and of the consequences of the waiver. After fully questioning the defendant and his counsel, the waiver was accepted by the court.
The bench trial was repeatedly continued, usually because of the victim’s failure to show up for trial. L.T. was in jail when the trial was held.
At bench trial, the witnesses testified as previously noted, with the state calling these witnesses:
• Sergeant Pratt;
• a juvenile who was allegedly the victim of another charged count; and
• L.T.
| sWhen the state rested, Harris moved for acquittal, which was denied.
The defendant called S.P.D. Officer T.W. Adgate, who testified that:
• in January 2003, the police department had a policy allowing officers the option *765 of issuing a summons to female suspects instead of formally arresting them and requiring them to post bond to satisfy their bail obligation; and
• even in cases where an officer decided to only issue a summons, however, the policy required that a record be made of that summons, to be turned in with his report.
S.P.D. Officer Carolyn Harris clarified that if an officer wrote a citation, but changed his mind, he could either write “void” on the citation and turn it in, or merely keep both copies of the citation.
S.P.D. Officer Fred Taylor also testified about this booking/summons policy in effect at the time of the offense. The defendant chose not to testify.
In rendering its verdict, the trial court noted these problems with L.T.’s testimony:
• she gave two prior inconsistent statements;
• she demonstrated a lack of interest and willingness to cooperate in the investigation and trial;
• she had a lengthy criminal history;
• she was an admitted abuser of drugs; and
• she had a troubling demeanor on the witness stand.
In convicting the defendant, however, the trial court commented that:
• the outcome would have been different, but for the money and condoms seized from the officer’s patrol unit; and
• it believed that L.T.’s testimony was corroborated, even with all of her faults and questionable attributes, by her knowledge of the money and condoms in the patrol car.
LThe court then found the defendant guilty of forcible rape and one count of public bribery, but not guilty on the other three counts.
The defendant filed a motion for new trial and for post-verdict judgment of acquittal, both of which were denied.
The trial court sentenced the defendant to lijé years at hard labor on the forcible rape conviction, plus one year hard labor on the public bribery conviction. The two sentences were ordered to be served concurrently.
The defendant filed a motion for reconsideration of sentence, which was denied. This appeal followed.

SUFFICIENCY

The defendant argues the evidence to convict him was insufficient, attacking:
• the contradictory testimony given by the victim, and
• the lack of corroborating evidence.
The state argues that the trial court’s credibility determinations should not be disturbed on appeal. The state has the better argument.
La. R.S. 14:42.1 provides:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
(2) When the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by a narcotic or anesthetic agent or other controlled dangerous substance *766 17administered by the offender and without the knowledge of the victim.
B. Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than fíve nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence.
La. R.S. 14:118 provides, with our emphasis added:
A. (1) Public bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
(a) Public officer, public employee, or person in a position of public authority.
(b) Election official at any general, primary, or special election.
(c) Grand or petit juror.
(d) Witness, or person about to be called as a witness, upon a trial or other proceeding before any court, board, or officer authorized to hear evidence or to take testimony.
(e) Any person who has been elected or appointed to public office, whether or not said person has assumed the title or duties of such office.
(2) The acceptance of, or the offer to accept, directly or indirectly, anything of apparent present or prospective value, under such circumstances, by any of the above named persons, shall also constitute public bribery.
B. For purposes of this Section, “public officer”, “public employee”, or “person in a position of public authority”, includes those enumerated in R.S. 14:2(9), and also means any public official, public employee, or person in a position of public authority, in other states, the federal government, any foreign sovereign, or any subdivision, entity, or agency thereof.
C. Whoever commits the crime of public bribery shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both.
| RThe standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132. This standard, now legislatively embodied in La. C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
*767 laWhere there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, Allen v. Louisiana, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.6/26/98), 719 So.2d 1048. This is equally applicable to the testimony of victims of sexual assault. State v. Hannon, 37,351 (La.App.2d Cir.8/20/03), 852 So.2d 1141. Indeed, such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. Id. A review of the record reveals that the evidence, viewed in the light most favorable to the prosecution, is sufficient to support both convictions in this case.

Forcible Rape

The victim’s testimony was direct evidence sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime of forcible rape. This court accords great deference to a trial court’s decision to accept or reject the [^testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422. In the present case, the trial court frankly listed the many problems with the victim’s testimony. The trial court chose to believe her because of two pieces of physical evidence found in the car:
• the money[1] in the sun visor, and
• the black condoms in the trunk.
The victim admitted that she provided the police with two statements denying she was raped by the officer. She also testified of her fear that such statements by her, a person with legal troubles of her own, would make matters worse for her. The interviewing officer testified as to her being upset as she initially denied the rape. He believed she was covering up a sexual assault.
Most importantly, there was no internal contradiction or irreconcilable conflict with physical evidence with regard to the victim’s testimony regarding the essential elements of the crime, particularly with regard to the element of consent. Hence, this one witness’s testimony, obviously believed by the trier of fact, is sufficient support for a requisite factual conclusion. See State v. White, supra. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, supra. Because the evidence was sufficient to support the charged offense, the trial court did not err in denying the defendant’s motion for post-verdict judgment of acquittal as to forcible rape.
| ^Public Bribery
As to this conviction, the defendant stopped the victim for a traffic offense, and when he determined she had two outstanding misdemeanor warrants, arrested her, handcuffed her, and placed her in her patrol car to transport her to *768 jail. On the way, the defendant told the victim that it was her lucky day, and that he would be her bail bondsman. He took $200 from her in return for not taking her to jail. Her testimony is supported by the officer violating S.P.D. policy by disengaging the video and audio recording system upon discovering that she had cash money on her.
Although there was a dispute at trial as to whether an officer had the discretion to issue a summons to a female offender instead of arresting her, this distinction is moot, since the defendant neither brought the victim in to be booked, nor did he issue a summons. Despite the surveillance tape showing the defendant being arrested and handcuffed, no report was ever made by the defendant explaining why or on what basis the offender was released. The evidence was sufficient to support the charged offenses. Consequently, the trial court did not err in denying the defendant’s motion for post-verdict judgment of acquittal as to the conviction of one count of public bribery.

WAIVER OF JURY TRIAL

La. C.Cr.P. art. 780(A) provides:
A. A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment, the defendant in such cases shall be informed by the court of his right to waive trial by jury.
|12We have reviewed the transcript of the defendant’s waiver of jury trial, and we find defendant’s waiver to be clear, unambiguous, and very obviously freely, voluntarily, and knowingly entered, all with benefit of counsel. The learned trial court was painstakingly thorough in ascertaining that this waiver was strictly in accordance with all relevant jurisprudence on this subject.
At a hearing held on April 26, 2004, the defendant was present with his lawyer. After being sworn, he admitted completing 12 grades in school, further acknowledging that he could read and write. The trial court explained to Harris his absolute right to have a trial by jury, how the jury trial would proceed, and the consequences of the waiver of the right to a jury trial. After being so warned, the defendant expressly stated that he wanted to waive his right to a jury trial, and be tried by a judge alone. Only after fully and patiently questioning the defendant and his attorney did the learned trial court accept the defendant’s proffered waiver of trial by jury, in full compliance with jurisprudential requirements. See State v. Brooks, 2001-1138 (La.App. 1st Cir.3/28/02), 814 So.2d 72, writ denied, 2002-1215 (La.11/22/02), 829 So.2d 1037.
The right to trial by jury is protected by La. Const, art. I, § 17 (1974), the pertinent part of the section being as follows:
Except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury.
Here, the record clearly reflects that the defendant knowingly and intelligently elected to be tried by the judge alone.
| ^DECREE
We AFFIRM the conviction and sentence on each of these crimes.

. She alleged that there was $200; $382 was actually found.