934 So.2d 146 (2006)
STATE of Louisiana
v.
Michael ALLEN.
No. 2005 KA 1622.
Court of Appeal of Louisiana, First Circuit.
March 29, 2006.
*150 Hon. Camille A. Morvant II, District Attorney, Steven M. Miller, Assistant District Attorney, Thibodaux, for State of Louisiana.
Katherine M. Franks, Slidell, for Defendant-Appellant Michael Allen.
Before: KUHN, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
The defendant, Michael Allen, was charged by amended bill of information with one count of second degree robbery, a violation of La. R.S. 14:64.4, and pled not guilty. He waived his right to a jury trial, and following a bench trial, was found guilty as charged. He was sentenced to twenty-five years at hard labor. He now appeals, designating five assignments of error.[1] For the reasons that follow, we *151 affirm the defendant's conviction and sentence.

FACTS
The victim, Todd Anthony Cheramie, testified at trial. On August 17, 2004, at approximately 3:00 a.m., he was walking to work on Highway 1. Three men in a car offered the victim a ride, and he thanked the men, but declined the offer. Thereafter, the men returned and again offered the victim a ride. This time the victim accepted the offer and got into the back of the car. The back-seat passenger, later identified as Earl Anthony Curole, Jr., struck the victim on the side of his head. The driver of the car, later identified as the defendant, drove the vehicle behind a car wash. The front-seat passenger, later identified as Troy Loupe, stated, "It won't take long[,]" and indicated he had to take care of something. The defendant then exited the vehicle, went to the back of the car, and opened the door next to the victim. The defendant pulled the victim by his feet, while Curole pushed him out of the car. The defendant dragged the victim onto the cement. The defendant repeatedly told the victim to, "Give it up, bitch," held his legs, and searched through the victim's shoes, while Curole and Loupe kicked the victim in the face and the ribs. The defendant took a pack of cigarettes, the victim's wallet, one dollar and fifty cents cash, some keys, and some marijuana from the victim's pockets.
As a result of the injuries to his face and eye socket, the victim suffered pain and stayed home from work for approximately one week. He also suffered injuries to his hands and ribs. When asked if the injuries he suffered hurt him, he stated he cried like a baby. At the time of trial, he was still having problems with his eyesight. He had good eyesight prior to being attacked.
The victim initially went to The Lady of the Sea Hospital for treatment, but then went to Terrebonne General Medical Center. At the latter hospital, his treating physician told him the bones of his left eye socket were fractured and that his eyes might come out of their sockets if he blew his nose and sneezed at the same time.
Dr. Jonathan Allen of Terrebonne General Medical Center also testified at trial. He treated the victim following the attack. The victim indicated he had been hit with an unknown object and punched and kicked. He rated his pain level, on a scale of one to ten, as a ten. He had soft tissue swelling in his hands, abrasions and contusions to both sides of his face, swelling and bruising to his left eye, and bruising to the left side of his face. A CAT scan of his face revealed an inferior orbital fracture or an inferior blowout fracture. Orbital fractures are generated primarily with trauma, usually from something small enough to fit inside the orbital rim. Dr. Allen indicated even a minor fracture of the orbital bone would be considered a serious injury, and based on his experience evaluating and treating patients with the injury, it would be painful.
The State also played the defendant's August 25, 2004 audiotaped statement at trial. The defendant claimed he was driving a car with "Troy" in the back seat and "Earl" in the front seat and gave "a dude" a ride. According to the defendant, it was Troy's idea to give the victim a ride. The defendant claimed the victim talked about marijuana, and he (the defendant) pulled the car over by the car wash. He claimed it was his, Troy's, and Earl's idea to pull the car over, and he intended to take the victim's marijuana from him. The defendant claimed he then jumped out of the car and told the victim to "give it here." The defendant claimed Earl started hitting the victim, and he (the defendant) "grabbed *152 [the victim] out of the car" and put him down on the cement, where Troy and Earl kicked and punched the victim. The defendant denied taking off the victim's shoes, but conceded he took a bag of marijuana out of the victim's pocket.

SUFFICIENCY OF THE EVIDENCE
In assignment of error number 1, the defendant contends he was denied due process when the evidence introduced by the State was legally insufficient to support the verdict rendered by the trial court. He argues there was no testimony that he beat the victim, and thus, the trial court's decision to convict him was irrational and must be overturned.
The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove, in order to convict," every reasonable hypothesis of innocence is excluded. State v. Wright, 98-0601, p. 2 (La.App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157, XXXX-XXXX (La.11/17/00), 773 So.2d 732 (quoting La. R.S. 15:438).
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Wright, 98-0601 at 3, 730 So.2d at 487.
Louisiana Revised Statutes 14:64.4, in pertinent part, provides:
A. (1) Second degree robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another when the offender intentionally inflicts serious bodily injury.
(2) For purposes of this Section, "serious bodily injury" means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
The defendant argues the language "when the offender intentionally inflicts serious bodily injury" contained in La. R.S. 14:64.4 is identical to language contained in La. R.S. 14:34.1, and thus, jurisprudence concerning the latter provision is instructive in analyzing whether La. R.S. 14:64.4 requires proof of general or specific intent. We agree, and find that La. R.S. 14:64.4 requires proof of specific intent. See State v. Fuller, 414 So.2d 306, 309-310 (La.1982) (holding the requirement in La. R.S. 14:34.1 that the serious bodily injury be intentionally inflicted indicated the legislature intended that second degree battery be a crime requiring specific criminal intent).
Specific criminal intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It *153 may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. State v. Buchanon, 95-0625, p. 4 (La.App. 1 Cir. 5/10/96), 673 So.2d 663, 665, writ denied, 96-1411 (La.12/6/96), 684 So.2d 923.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24. However, the defendant's mere presence at the scene is not enough to "concern" an individual in the crime. A principal may be connected only to those crimes for which he has the requisite mental state. State v. Hampton, 98-0331, p. 13 (La.4/23/99), 750 So.2d 867, 880, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999).
The trial court provided a detailed analysis of the proof offered by the State against the defendant and why that proof was sufficient to prove the charge. In regard to the proof of the intent element, the court noted:
The State must further prove that the offender intentionally inflicted serious bodily injury. On this issue the evidence proves that Mr. Allen did not strike Mr. Cheramie, nor did he kick Mr. Cheramie. The issue then becomes whether or not Mr. Allen acted as a principal to the crime of second degree robbery.
. . . .
Therefore, Mr. Allen can be a principal to the crime of second degree robbery even if he did not physically strike the victim or kick the victim if the State proves beyond a reasonable doubt that he was concerned in the commission of the crime.
In proof of this element of the crime, the State offered the testimony of Todd Cheramie. Todd Cheramie testified that the defendant dragged him by his feet from the motor vehicle and the defendant held the victim's feet as he completed dragging him out of the vehicle at a position approximately two feet from the motor vehicle and began to remove the shoe or shoes of Mr. Cheramie apparently in some effort to locate some item of property upon Mr. Cheramie. And then began to touch the body of Mr. Cheramie and removed from Mr. Cheramie's pocket or pockets the dollar bill, approximately fifty cents in change, pack of cigarettes, wallet, driver's license and marijuana all at the same time that Earl Curole, Jr. and Troy Loupe were standing on either side of Todd Cheramie kicking him and striking him. Clearly this evidence proves beyond a reasonable doubt that the defendant, Michael Allen, was concerned in the commission of the crime of second degree robbery, or stated in another way set forth in the case law, that he participated in the commission of the crime of second degree robbery. He was accomplishing the taking of anything of value from the person of the victim while two codefendants were attempting to inflict bodily injury to Mr. Cheramie by striking him and kicking him.
Therefore, there is proof beyond a reasonable doubt that the defendant had the intent to inflict serious bodily injury upon Mr. Cheramie.
After a thorough review of the record, we are convinced the evidence presented herein, viewed in the light most favorable *154 to the State, proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of second degree robbery and the defendant's identity as a perpetrator of that offense. The facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence were sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant had the specific intent to inflict serious bodily injury on the victim during the offense. The defendant was not merely present at the scene. He knowingly participated in the execution of the offense against the victim and played an integral part in the completion of the offense. The defendant drove the vehicle while the victim was beaten by Curole and Loupe. Furthermore, the defendant dragged the victim out of the vehicle, demanded the victim's property, and forcefully removed the property from the victim while the defendant's accomplices viciously beat the victim to prevent his resistance. This assignment of error is without merit.

WAIVER OF RIGHT TO JURY TRIAL
In assignment of error number 2, the defendant contends he was denied his right to a jury trial pursuant to U.S. Const. amend. VI, and La. Const. art. I, § 17, when the trial court tried this case without obtaining a clear, knowing, and voluntary waiver from him.
Both the United States Constitution and the Louisiana Constitution expressly guarantee a criminal defendant the right to a jury trial. U.S. Const. amend. VI; La. Const. art. I, §§ 16, 17. However, some criminal defendants may, pursuant to statute, waive this constitutionally guaranteed right, provided the waiver of the right is knowingly and intelligently made. La. Code Crim. P. art. 780(A). State v. Brooks, XXXX-XXXX, p. 5 (La.App. 1 Cir. 3/28/02), 814 So.2d 72, 76, writ denied, XXXX-XXXX (La.11/22/02), 829 So.2d 1037.
A valid waiver of the right to a jury trial must be established by a contemporaneous record setting forth an apprisal of that right followed by a knowing and intelligent waiver by the accused. Waiver of this right is never presumed. See La. Code Crim. P. art. 780(A). Brooks, XXXX-XXXX at 5, 814 So.2d at 76. However, prior to accepting a jury trial waiver, the trial court is not obligated to conduct a personal colloquy inquiring into the defendant's educational background, literacy, and work history. Brooks, XXXX-XXXX at 7, 814 So.2d at 77.
In the instant case, the trial court correctly accepted the defendant's waiver of his right to a jury trial as knowingly and intelligently made. Prior to trial, the defendant appeared before the court with counsel, and counsel indicated that the defendant wished to waive his right to a jury trial. The court advised the defendant he had the right to a trial by a jury composed of twelve jurors and asked him if he understood that right. The defendant answered affirmatively. The court advised the defendant that he also had the right to waive his right to a jury trial and have his case decided by a judge. The defendant indicated he understood. The court advised the defendant that if he waived his right to a jury trial, he would not be able to change his mind and request a jury trial later. The defendant indicated he understood. The court gave the defendant the opportunity to again confer with his attorney before deciding whether he wanted to waive his right to a jury trial, and the defendant declined that opportunity. The court then asked the defendant if he wanted a trial by jury or did he waive his right to trial by jury. The defendant replied, "Waive a trial by jury. Trial without a jury." The court asked the defendant if *155 he was requesting a trial without a jury, and the defendant answered affirmatively. Clearly, this colloquy establishes that the defendant was apprised of his right to waive a jury trial and that he knowingly and intelligently did so. This assignment of error is without merit.

EXCESSIVE SENTENCE/INEFFECTIVE ASSISTANCE OF COUNSEL
In assignment of error number 3, the defendant contends the sentence imposed by the trial court was unconstitutionally excessive and was based upon his decision to exercise his constitutional right to a trial, an impermissible sentencing factor. In assignment of error number 4, the defendant contends trial counsel was ineffective in failing to ask for reconsideration of the twenty-five year sentence based in part upon an impermissible sentencing factor. We will address assignment of error number 3, even in the absence of a timely motion to reconsider sentence or a contemporaneous objection, because it would be necessary to do so as part of the analysis of the ineffective assistance of counsel claim. See State v. Bickham, 98-1839, pp. 7-8 (La.App. 1 Cir. 6/25/99), 739 So.2d 887, 891-892.
A claim of ineffectiveness of counsel is analyzed under the two pronged test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted. It is not sufficient for defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 859-860 (La.App. 1 Cir.1992), writ denied, 614 So.2d 1263 (La.1993).
The Louisiana Code of Criminal Procedure sets forth items that must be considered by the trial court before imposing sentence. La.Code Crim. P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Hurst, 99-2868, p. 10 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 83, writ denied, XXXX-XXXX (La.10/5/01), 798 So.2d 962.
Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate *156 if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. Hurst, 99-2868 at 10-11, 797 So.2d at 83.
Whoever commits the crime of second degree robbery shall be imprisoned at hard labor for not less that three years and not more than forty years. La. R.S. 14:64.4(B). The defendant was sentenced to twenty-five years at hard labor.
At sentencing, the court noted the defendant's criminal history indicated he had three prior felony convictions, specifically, convictions for simple burglary, and two convictions for possession of cocaine. As a result of those convictions, the defendant had been incarcerated on two occasions and his parole had been revoked on one occasion.
In regard to the evidence introduced at trial, the court found the evidence proved beyond a reasonable doubt that the defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim. The court also noted the instant offense was a crime of violence, and the defendant had committed the crime to obtain a controlled dangerous substance. The court rejected the alleged mitigating circumstance that the defendant was "only considered a principal" to the offense, noting that being a principal to an offense was not a mitigating circumstance, especially when the defendant had physically held the victim while the defendant's accomplices kicked the victim. The court also rejected the alleged mitigating circumstance that Curole had received "only" an eight-year sentence, noting Curole had availed himself of a plea agreement and it had not been necessary for a trial to be undertaken to prove his guilt.
The court also rejected the alleged mitigating circumstances that the defendant was mentally challenged, a high-school drop out, addicted to cocaine, and homeless. The court noted it did not consider any of the aforesaid conditions to be mitigating factors, and moreover, no evidence had been presented that the defendant suffered from mental illness or had an IQ of 70 or less. The court stated it had considered the defendant's age of twenty-eight years in determining an appropriate sentence. The court also stated it had considered the fact that the defendant had no other convictions for crimes of violence.
The court conceded the defendant's prior criminal history included many misdemeanors, but noted it also included three felony convictions, two terms of incarceration, and a revocation of parole. The court rejected the defendant's claim that he had shown remorse for the victim, noting the only time the defendant showed remorse was after he was being investigated as one of the parties who committed the robbery.
The court did not dispute that the victim did not lose any bodily organs or limbs as a result of the offense, but noted the evidence proved beyond a reasonable doubt that he suffered a fracture of the orbit of his eye during the offense and had to take narcotic pain medication over ten hours after being attacked. The court noted it had taken into consideration the fact that there was no proof of permanent impairment of the victim's eye.
Additionally, the court determined there was an undue risk that during the period of a suspended sentence, the defendant would commit another crime; that the defendant was in need of correctional treatment; and that a lesser sentence would *157 minimize the seriousness of the defendant's offense.
A thorough review of the record reveals the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the sentence herein. Further, the sentence imposed was not grossly disproportionate to the severity of the offense, and thus, was not unconstitutionally excessive.
The defendant argues the trial court's comment concerning the fact a trial had not been necessary for Curole indicated the court punished him (the defendant) for exercising his constitutional right to stand trial. We disagree. The court's comment concerning Curole's case was made in addressing the defendant's claim that Curole's eight-year sentence for committing the offense mitigated against a lengthier sentence for the defendant.
The defendant also argues the court should not have considered the fact the defendant was a convicted felon and had a lengthy arrest record because those facts were not encompassed within the verdict. We disagree. The sources of information relied upon by the sentencing court are varied and may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrest as well as conviction records. State v. Myles, 94-0217, p. 2 (La.6/3/94), 638 So.2d 218, 219 (per curiam).
Any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476, 120 S.Ct. 2348, 2355, 147 L.Ed.2d 435 (2000); Jones v. United States, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 1224 n. 6, 143 L.Ed.2d 311 (1999). The statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. Blakely v. Washington, 542 U.S. 296, 303, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004). (Emphasis in original.)
Neither the defendant's prior convictions[2] nor his prior arrests increased the maximum penalty for the instant offense.
In regard to the defendant's ineffective assistance of counsel claim, we note, even assuming arguendo, defense counsel performed deficiently in failing to timely move for reconsideration of the sentence, the defendant suffered no prejudice from the deficient performance because this court considered the defendant's excessive sentence argument in connection with the ineffective assistance of counsel claim.
These assignments of error are without merit.

PATENT ERROR
In reviewing the record for patent error, pursuant to La.Code Crim. P. art. 920(2), we have discovered the bill of information filed against the defendant in this matter was not signed by the district attorney or by one of his assistants on his behalf.
Louisiana Code of Criminal Procedure article 384, in pertinent part, provides, "[a]n information is a written accusation of crime made by the district *158 attorney ... and signed by him." However, by presenting the case at trial, the prosecution fully ratified the filing of formal charges; and, therefore, any protection afforded to the accused and to society by the requirement that the district attorney's signature appear on the bill of information was fully accorded herein. Further, although the failure of the district attorney to sign the bill of information is a ground for quashing the information, the defendant's failure to file a motion to quash waived his right to complain of the failure of the prosecutor to sign the bill of information. See State v. Thompson, 543 So.2d 1132, 1135 (La.App. 1 Cir.1989).

CONCLUSION
For the above and foregoing reasons, we affirm the defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Assignment of error number 5 alleges patent error due to the lack of a signed bill of information and lack of an affirmative jury trial waiver. We address the lack of a signed bill of information in the patent error section of this opinion and address the jury trial waiver issue in connection with assignment of error number 2.
[2] In any event, the rule of Apprendi makes exception for prior convictions because they are the product of proceedings that afford crucial procedural protections, particularly, fair notice, the right to jury trial, and proof beyond a reasonable doubt. State v. Brown, 2003-2788, p. 22 (La.7/6/04), 879 So.2d 1276, 1290, cert. denied, 543 U.S. 1177, 125 S.Ct. 1310, 161 L.Ed.2d 161 (2005).