STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 KA 0614

STATE OF LOUISIANA

VERSUS

CHRISTOPHER NICHOLLS EASON

Judgment Rendered: **DEC 2 7 2019**

********

Appealed from the 21st District Court
In and for the Parish of Tangipahoa
State of Louisiana
Case No. 1402849

Honorable Robert H. Morrison, II, Judge Presiding

********

| | |
|---|---|
| Scott M. Perrilloux<br>District Attorney<br>Patricia Parker Amos<br>Assistant District Attorney<br>Amite, Louisiana | Counsel for Appellee<br>State of Louisiana |
| Lieu T. Vo Clark<br>Mandeville, Louisiana | Counsel for Defendant/Appellant<br>Christopher Nicholls Eason |
| Christopher Nicholls Eason<br>Saint Gabriel, Louisiana | Defendant/Appellant<br>In Proper Person |

********

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**Lanier, J.**

The defendant, Christopher Eason, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1. He pled not guilty. Following a jury trial, he was found guilty of the responsive offense of manslaughter, a violation of La. R.S. 14:31. See La. Code Crim. P. art. 814(A)(3). He was sentenced to thirty years at hard labor. He now appeals, challenging the sufficiency of the evidence,[1] venue and jurisdiction, his sentence as excessive, and the denial of his motions for mistrial and new trial based on alleged juror misconduct.[2] For the following reasons, we affirm the defendant's conviction and sentence.

## FACTS

The charred body of the victim, Kimberly Bowman, a white female, was recovered from a burned car in Orleans Parish early on October 20, 2014. Examination of the body revealed the victim did not die from smoke inhalation, but rather from a fatal gunshot wound through her chest prior to being burned. According to expert testimony, the victim survived seconds or minutes after being shot, but less than an hour.

Don Michael Raines testified at trial that he lived at the Contempo Apartments in Hammond, and he had sold marijuana to the victim prior to her death. On October 19, 2014, the victim called "for something," but Raines did not have any drugs to sell.

---

[1] In his pro se brief, the defendant claims factual and actual innocence based on an incorrect interpretation and reliance on **State v. Pierre**, 2013-0873 (La. 10/15/13), 125 So.3d 403 (per curiam) (which the defendant incorrectly references as "**Pierce**"). The defendant does not identify any *new* reliable scientific evidence, eyewitness testimony, or critical physical evidence of such persuasiveness that no reasonable juror would have convicted him in light of such evidence. See **Pierre**, 125 So.3d at 409. Instead, also citing **Jackson v. Virginia**, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the defendant simply alleges there was no scientific, eyewitness, or physical evidence to support his conviction, which we therefore construe as a challenge to the sufficiency of the evidence to support his conviction.

[2] In pro se assignment of error number three, the defendant argues "THE APPELLATE ATTORNEY PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT CHALLENGING THE RETURNED VERDICT OR THE IMPOSED SENTENCE." The defendant reserves this claim for post-conviction relief.

Raines told the victim "she could come through, somebody would be out there." The victim told Raines to "give her a few minutes" because she was cashing a check at the "money center" in Walmart. According to Raines, the defendant was at a dice game across the street when Raines yelled to him, "that a girl going to be coming through trying to get some smoke, and she was going to pull up across the street." Thereafter, Raines heard two gunshots and saw a car speeding off. He believed it was the same car the victim had used the previous day when buying drugs from him. Raines called the victim's phone, but there was no answer. He then called the defendant's phone, and initially, there was also no answer. Raines, however, kept calling both phones. The defendant eventually answered and was frantic, stating "she's bleeding, she's bleeding," and then hung up.

According to Raines, the defendant came to Raines' apartment the next morning and told him "[the victim] upped with a gun and [the defendant] had to shoot her[.]" The defendant also told Raines that after shooting the victim, the defendant drove her to New Orleans and "set the car on fire." The defendant told Raines to dispose of Raines' phone because the victim had called him. Raines denied killing the victim.

Johnny Ray Walker also testified at trial. In October 2014, he was living with the defendant, the defendant's girlfriend Elexis Maryland, her brother, and her daughter in an apartment in the Contempo Apartments. Walker had been on probation for carnal knowledge of a juvenile. He had failed to report to his probation officer, and an arrest warrant was outstanding for him. Walker testified that on the night in question, the defendant told him, "[the defendant] was going to go hit a lick[,]" which was street talk for "to try to get any means of money," or "to do something wrong." The defendant stated he had an "easy lick" for money from a white female. Walker testified he unsuccessfully tried to dissuade the defendant from his plan, both "[b]ecause it was wrong," and because Walker was afraid of any police

3

attention due to his outstanding warrant. Walker later fell asleep while playing games on his phone.

Walker awoke to his phone ringing. The defendant was on the line and stated he "just committed a murder" in the back of the Contempo Apartments. The defendant further told Walker that he had driven the body to New Orleans and burned it in the car. According to Walker, the defendant told him that "he [the defendant] walked up to the car and tried to rob her or whatever, and he pulled a gun, and she pulled a gun, and he shot her." The defendant then told Walker to let him talk to Maryland. Thereafter, Walker and Maryland drove to New Orleans and picked up the defendant.

Antoine Schaffer also testified at trial. He and the defendant were "associates," and the defendant confided in him. Schaffer testified the defendant told him "they were supposed to have a lick." A white lady was "supposed to come through to get … some weed." The defendant was supposed to sell the lady drugs, "but [the defendant] reached for his gun because he was going to pull a lick." The victim, however, also reached for her gun. They wrestled and, in the struggle, the defendant shot the victim. The defendant pushed the victim over, got into her car and left. He drove the car to "some projects" in New Orleans and "burned the car up." The defendant then called his girlfriend.

The defendant also testified at trial. In 2014, he was living with Maryland in the Contempo Apartments in Hammond. According to the defendant, during the night of October 19, 2014, Raines called him and wanted the defendant to "ride somewhere with him." The defendant met Raines at Raines' apartment and walked with him to a car parked about thirty seconds away. The defendant claimed Raines left his phone with his girlfriend and told her to call the defendant if she needed to contact Raines. The defendant testified Raines opened the door of the car, revealing a body on the front floor of the vehicle. The defendant claimed he was scared and

4

initially refused to get in the vehicle, but eventually got into the vehicle because he was afraid Raines would shoot him if he tried to run away. According to the defendant, Raines stated "we have to go somewhere and get rid of the body." The defendant claimed Raines then drove the vehicle to an abandoned building in New Orleans. According to the defendant, once they arrived, he made an excuse to leave, stating he was "going to go get some help from somebody." The defendant then borrowed a phone and called Maryland to come and pick him up. The defendant denied murdering the victim. He also denied confessing that he had killed someone to Walker and Schaffer. Analysis of cell site information indicated that Raines' phone did not leave the Hammond area between 9:00 p.m. on October 19, 2014 and 6:00 a.m. on October 20, 2014.

## SUFFICIENCY OF THE EVIDENCE

In pro se assignment of error number two, the defendant argues the evidence was insufficient to support the conviction because "not one of the witnesses were testifying on a personal eyewitness account that they saw Defendant pull the trigger that ended the life of the victim." The defendant further complains that the State failed to present scientific or physical evidence that he killed the victim.

In cases such as this one, where the defendant raises issues on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should preliminarily determine the sufficiency of the evidence, before discussing the other issues raised on appeal. When the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must review the assignments of error to determine whether the accused is entitled to a new trial. **State v. Hearold**, 603 So.2d 731, 734 (La. 1992); **State v. Smith**, 2003-0917 (La. App. 1 Cir. 12/31/03), 868 So.2d 794, 798.

5

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. **State v. Mitchell**, 2016-0834 (La. App. 1 Cir. 9/21/17), 231 So.3d 710, 731, writ denied, 2017-1890 (La. 8/31/18), 251 So.3d 410.

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. The facts then established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. **State v. Watts**, 2014-0429 (La. App. 1 Cir. 11/21/14), 168 So.3d 441, 444, writ denied, 2015-0146 (La. 11/20/15), 180 So.3d 315.

In **State ex rel. Elaire v. Blackburn**, 424 So.2d 246, 251 (La. 1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), the Louisiana Supreme Court recognized the legitimacy of a "compromise verdict," *i.e.*, a legislatively approved responsive verdict that does not fit the evidence, but that (for whatever reason) the jurors deem to be fair, as long as the evidence is

sufficient to sustain a conviction for the charged offense. If the defendant timely objects to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict, the court overrules the objection, and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the evidence and may reverse the conviction if the evidence does not support the verdict. However, if the defendant does not enter an objection (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury. *Id.*

In this case, there was no objection to the instruction on the responsive verdict of manslaughter. The jury's ultimate reasoning for returning this responsive verdict is unclear, but it is possible that this verdict represented a "compromise." Regardless of the jury's ultimate reasoning, the evidence presented at trial was sufficient to convict the defendant of second-degree murder.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific criminal intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. **State v. Henderson**, 99-1945 (La. App.

7

1 Cir. 6/23/00), 762 So.2d 747, 751, writ denied, 2000-2223 (La. 6/15/01), 793 So.2d 1235.

Any rational trier of fact, viewing the evidence in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of second degree murder and the defendant's identity as the perpetrator of that offense against the victim. The verdict returned in this matter indicates the jury accepted the testimony of Raines, Walker, and Schaffer that the defendant shot the victim. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. **State v. Taylor**, 97-2261 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See **State v. Mitchell**, 99-3342 (La. 10/17/00), 772 So.2d 78, 83.

Further, when a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **State v. Captville**, 448 So.2d 676, 680 (La. 1984). The jury's verdict also reflects the reasonable rejection of the defendant's theory that Raines murdered the victim. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the fact finder.

8

See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). Further, in accepting a hypothesis of innocence that was not unreasonably rejected by the factfinder, a court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law. See **State v. Mire**, 2014-2295 (La. 1/27/16), 269 So.3d 698, 703 (per curiam). We cannot say that the jury's determination was irrational under the facts and circumstances presented to it. **Ordodi**, 946 So.2d at 662.

We also reject the defendant's challenge to his conviction based on insufficient scientific or physical evidence. Initially, we note the availability of scientific or physical evidence in this matter was limited due to the burning of the victim's body and car. Further, the district attorney has broad discretion in both the institution and handling of criminal prosecutions. La. Const. art. V, §26(B); La. R.S. 16:1(B). He may decide whom, when, and *how* to prosecute. La. Code Crim. P. art. 61; **State v. Walker**, 2000-0334 (La. App. 1 Cir. 12/22/00), 775 So.2d 663, 666, writ denied, 2001-0235 (La. 12/7/01), 803 So.2d 23. The district attorney acted within his broad discretion in prosecuting this matter.

This assignment of error is without merit.

## VENUE AND JURISDICTION

In pro se assignment of error number one, the defendant argues the trial court was an improper venue and lacked jurisdiction to hear the case because the victim's body was recovered in Orleans Parish.

A district court has original jurisdiction over all criminal matters and exclusive original jurisdiction of felony cases. See La. Const. art. V, § 16(A); **State v. Bell**, 2014-1046 (La. App. 1 Cir. 1/15/15), 169 So.3d 417, 425. Every person charged with a crime is presumed innocent and entitled to a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law. La. Const. art. I, § 16.

9

Louisiana Code of Criminal Procedure article 611, in pertinent part, provides:

> A. All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.

> B. If the offender is charged with any criminal homicide enumerated in R.S. 14:29 or any other crime involving the death of a human being and it cannot be determined where the offense or the elements of the offense occurred, the offense is deemed to have been committed in the parish where the body of the victim was found.

Venue is not an essential element of the crime to be proven by the State at trial; rather, it is a jurisdictional matter to be proven by the State by a preponderance of evidence and decided by the court in advance of trial. La. Code Crim. P art. 615. Critically, venue is a factual question and, on appeal, review is limited to whether the State submitted some evidence of proper venue. As such, review of the issue on appeal is not concerned with weighing the sufficiency of the evidence presented by the State. Finally, a trial court's ruling on a motion to quash is discretionary and should not be reversed absent a clear abuse of discretion. **State v. Gross**, 2018-1014 (La. App. 1 Cir. 2/25/19), 273 So.3d 317, 321, writ denied, 2019-00498 (La. 9/17/19), 278 So.3d 972.

Prior to trial, the defendant moved to quash, alleging the court lacked jurisdiction due to improper venue. At the hearing on the motion, the State presented testimony from Tangipahoa Parish Sheriff's Office Detective Dale Athmann. Detective Athmann testified the autopsy of the victim indicated she died from a gunshot wound, rather than from being burned. Further, Adrian Guidry provided information that the murder had taken place in Tangipahoa Parish and that information was corroborated by Raines. The trial court denied the motion to quash, referencing "evidence presented that the trail of events leading up to the

alleged crime ... commenced in Tangipahoa Parish." There was no clear abuse of discretion in the denial of the motion to quash.[3]

This assignment of error is without merit.

## EXCESSIVE SENTENCE

In pro se assignment of error number four, the defendant argues "the sentence imposed by the trial court is excessive and a wrongful imposition of pain and suffering." He claims he "received a communication from the judge and his court appointed attorney that he would probably receive a sentence of 8 – 12 years." He further claims "there was not sufficient evidence to sentence Defendant to thirty years of his life for riding in a vehicle."

We address this assignment of error, even in the absence of a timely motion to reconsider sentence or a contemporaneous objection, because the defendant complains in pro se assignment of error number three that counsel was ineffective "by not challenging ... the imposed sentence." See **State v. Allen**, 2005-1622 (La. App. 1 Cir. 3/29/06), 934 So.2d 146, 155.

A claim of ineffectiveness of counsel is analyzed under the two pronged test developed by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that the defendant was deprived of a fair trial; the defendant must prove actual prejudice

---

[3] Indeed, even if the victim survived until entering Orleans Parish, Tangipahoa Parish was still a proper venue for this matter because the defendant shot the victim in Tangipahoa Parish at the outset of a continuous chain of events that, under this theory, led to her death in Orleans Parish. See La. Code Crim. P. art. 611(A); **State v. Bordelon**, 2007-0525 (La. 10/16/09), 33 So.3d 842, 863 n.7 (per curiam).

before relief will be granted. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. **Allen**, 934 So.2d at 155.

Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. A sentence is constitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless imposition of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. A district court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. **State v. Forrest**, 2016-1678 (La. App. 1 Cir. 9/21/17), 231 So.3d 865, 872, writ denied, 2017-1683 (La. 6/15/18), 257 So.3d 687.

The Louisiana Code of Criminal Procedure sets forth items that must be considered by the district court before imposing sentence. See La. Code Crim. P. art. 894.1. The district court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the district court's stated reasons and factual basis for its sentencing decision. Remand for full compliance with Article

12

894.1 is unnecessary when a sufficient factual basis for the sentence is shown. **Forrest**, 231 So.3d at 872.

As applicable here, whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. La. R.S. 14:31(B). The defendant was sentenced to thirty years at hard labor.

In sentencing the defendant, the trial court noted it had considered the factors relative to imposition of sentence and "the extreme nature of certain – of the circumstances involved in this case." The court further noted it had reviewed the presentence investigation report and "mitigation," and added, "I do take into account the fact that I'm not apprised of any prior felony convictions."

A thorough review of the record reveals the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the sentence herein. See La. Code Crim. P. art. 894.1(A)(3), (B)(6), (B)(9), (B)(10), (B)(18), (B)(21), (B)(28). Further, the sentence imposed was not grossly disproportionate to the severity of the offense, and thus, was not unconstitutionally excessive. Additionally, the instant record contains no evidence of a sentencing agreement for "a sentence of 8 – 12 years." Only matters contained in the record can be reviewed on appeal. **State v. Lavy**, 2013-1025 (La. App. 1 Cir. 3/11/14), 142 So.3d 1000, 1007, writ denied, 2014-0644 (La. 10/31/14), 152 So.3d 150. We also reject the claim that the defendant was sentenced to thirty years at hard labor for "riding in a vehicle." To the contrary, the defendant was sentenced for murdering the victim.

In regard to the defendant's ineffective assistance of counsel claim for failing to preserve review of the sentence for excessiveness, we note, even assuming arguendo, defense counsel performed deficiently in failing to timely move for reconsideration of the sentence, the defendant suffered no prejudice from the deficient performance because this court considered the defendant's excessive

13

sentence argument in connection with the ineffective assistance of counsel claim. See **Allen**, 934 So.2d at 157.

This assignment of error is without merit.

## JURY MISCONDUCT

The defendant combines counseled assignments of error numbers one and two for argument. He contends the trial court erred in denying the motions for mistrial and new trial because there was jury misconduct. He argues removing Juror Matthew Stogner "did not solve the problem that there was the possibility that several other jurors may have seen or read articles that contained extraneous information not heard during trial testimony."

A criminal defendant has a Sixth Amendment right to a fair trial by a panel of impartial, indifferent jurors. Louisiana Code of Criminal Procedure article 797 protects a defendant's right to an impartial jury. See also La. Const. art. I, § 16. It is essential that all facts considered by the jury be presented in the courtroom with the full protection of the defendant's rights to confrontation and due process. A juror who considers evidence not developed or admitted at trial violates his sworn duty and may be guilty of misconduct. Therefore, if a reasonable possibility exists that extraneous information considered by the jury affected its verdict, a new trial is mandated. **State v. Hudson**, 2017-0154 (La. App. 1 Cir. 9/15/17), 2017 WL 4082424, at *6, writ denied, 2017-1735 (La. 6/1/18), 243 So.3d 1065.

Louisiana Code of Criminal Procedure article 775 provides for a mistrial when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. A mistrial is a drastic remedy to be invoked only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. The decision whether to grant or to deny a mistrial lies within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of that discretion. Juror misconduct is not grounds for an automatic mistrial;

14

prejudice must also be established. Thus, a mistrial is not warranted on the basis of a juror's exposure to publicity absent a determination that the juror was actually exposed to the publicity in question and was so impressed by it as to be incapable of rendering a fair and impartial verdict. The trial court has the discretion to use the services of alternate jurors rather than to grant a mistrial upon a proper finding that this is the best course of action. *Id.*

The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such injustice is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded. La. Code Crim. P. art. 851(A). The court, on motion of the defendant, shall grant a new trial whenever the court's ruling on an objection made during the proceedings shows prejudicial error. See La. Code Crim. P. art. 851(B)(2). The denial of a motion for a new trial is not subject to appellate or supervisory review of the supreme court, except for error of law. See La. Code Crim. P. art. 858. Whether to grant or deny a motion for new trial rests within the sound discretion of the trial court, and that decision will not be disturbed on appeal absent a clear abuse of discretion. **Hudson**, 2017 WL 4082424, at *7.

During the presentation of the State's case on the last day of trial, outside of the presence of the jury, the court advised the State and the defense that Juror Eva Francois had reported that "one of our other jurors somehow has done some research on the Internet." The court had Juror Francois brought into the courtroom by herself and sworn. Juror Francois indicated that another juror had stated, "I probably shouldn't have done it, but I Googled something." Juror Francois further stated, "[e]verybody wasn't in there at the time. It was only a few people. She just said she had Googled something." Juror Francois added, "I just heard her say something about a previous case that was mentioned. Something like that." The State and the defendant were permitted to question Juror Francois, and the State asked her, "[d]id

15

you hear anything from her conversation in any way at all that would change your opinion in any way or direct you in any way?" Juror Francois answered, "[o]h, absolutely not, ... because I feel like you should be totally open-minded because this is so important."

Thereafter, the court had each juror individually brought into the courtroom, sworn, and made available for questioning by the court and the parties concerning whether they had any information concerning the allegation of a juror "Googling" or "internet checking" on the case. Juror Kennasha Barnes answered the question negatively, but indicated she had "glanced" at yesterday's newspaper at her grandfather's house. She testified nothing she saw or read in any way influenced her opinion in the case because she "didn't really read [the article]." She stated other jurors had said "how they saw it on the news and the newspaper, and I just mentioned that I saw it in the newspaper. I didn't read anything." She indicated she had no knowledge, outside the presence of the courtroom, of any facts whatsoever that would affect the case of the State or the defendant positively or negatively.

Juror Danita Maxsween was also unaware of any juror doing independent research about the case. She indicated, however, "[s]omeone went to a convenience store to get something and happened to notice the front page that just said something about a trial being conducted." She also reported that "[s]omeone spoke this morning about the case was on the news." She indicated nothing she had heard from the jurors in question had positively or negatively swayed her opinion about the case.

Juror Victoria Sarafinis was also unaware of any juror doing independent research about the case. In regard to whether any juror had been exposed to the newspaper article, she indicated, one or two of the jurors "heard it was on the front page. That was it." Juror Sarafinis indicated she had no outside information whatsoever that would influence her decision in any way for either side.

Juror Arthur Shilling was also unaware of any juror doing independent research about the case. In regard to whether any juror had been exposed to the newspaper article, he indicated Juror Stogner had stated his wife "was reading something," and Juror Stogner told her "he didn't want to know about it or whatever[.]" Juror Shilling stated, "[Juror Stogner] wasn't directly speaking that. It was just a comment. I don't think he was addressing anybody." When asked if there was any outside influence whatsoever that would influence him in any way for or against either side, Juror Schilling answered, "[a]bsolutely not."

Juror Melanie Giangrosso was also unaware of any juror doing independent research about the case. In regard to whether any juror had been exposed to the newspaper article, she indicated, she had "[h]eard somebody say that they – somebody told them that they saw a murder trial in Hammond or whatever, but that was it." She indicated she had no outside information whatsoever that would influence her decision for or against either side. She further indicated none of her fellow jurors had expressed to her that they had any outside information that would influence them for or against either side.

Juror Matthew Stogner stated he had heard that "people" were "pulling up newspapers" because some of the jurors were getting text messages that "this is in the Hammond Daily Star." He testified, however, he was not aware of any jurors talking about any details or things that have been said or things that are supposed to have been fact or not. Juror Stogner stated he read the newspaper daily and had read the article concerning the case. The article did not affect him by influencing his opinion one way or another.

The defense moved for a mistrial arguing that the defendant would be unable "to receive a fair trial due to the actions of and failure to obey the instructions of the jury." The State responded that it did not appear any jurors were discussing facts or conclusions of the case and no determinations were made or outside influences

exerted that would cause the jurors to draw a conclusion contrary to the court's order as to what is the law.

The trial court denied the motion for a mistrial and noted the objection of the defense to the ruling. The court found that while some of the jurors may have been exposed to the fact that there was an account about the trial in the local newspaper, it did not find that the account influenced them or provided any information that would have influenced them. Thereafter, the defense moved to strike Juror Stogner from the jury. The court granted the motion.

The court introduced into the record only a copy of The Daily Star newspaper from the previous day. The headline on the first page was "Murder trial underway[.] Attorney points to discrepancies in testimony[.]" The article described the defendant as sitting "apparently unfazed" by the testimony he heard on the first day of his second-degree murder trial. The article indicated the defendant was accused of murdering the victim in a "botched drug deal." It went on to state, "[t]he case took an interesting, if not an inaccurate, turn when Don Raines, 36 of Hammond, was called to the stand. Raines is currently awaiting a murder charge on a separate case."

Prior to sentencing, the defense moved for a new trial, claiming prejudicial conduct had occurred during the trial and "justice would be met by granting a new trial." The defense argued Juror Stogner had read an article about the trial and the article involved evidence not brought out at trial, specifically, "the prior convictions of Adrian Guidry, a witness who did not have the opportunity to testify during trial."[4] The defense claimed Juror Stogner had "spoke about reading or seeing the article with other jurors."

The State responded that the court had "meticulously" examined each juror to gauge the impact, if any, of the newspaper article and only one juror was removed. The State noted each juror had stated under oath that he or she had not received any

---

[4] Adrian Guidry was not mentioned in the newspaper article introduced into the record.

outside influence and had not been influenced in any way to vote for or against either side.

The trial court denied the motion for new trial. The court noted that once the information concerning a juror conducting independent research was discovered, it went through a process that adequately showed there was no tainting of the jury by the juror who disregarded the court's instructions with respect to media. The court found "I did not determine and will not determine that the jurors were tainted to the point that a new trial should be granted for that."

There was no clear abuse of discretion in the denial of the motion for mistrial. Juror Stogner was removed from the jury, and while other jurors may have been exposed to the publicity in question, the defendant failed to establish that they were so impressed by it as to be incapable of rendering a fair and impartial verdict. There was also no clear abuse of discretion in the denial of the motion for new trial. The defendant failed to show that the denial of the motion for mistrial resulted in injustice to him.

These assignments of error are without merit.

**CONVICTION AND SENTENCE AFFIRMED.**